J-S75012-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| LIONEL LAWRENCE | |
| Appellant | No. 3044 EDA 2013 |

Appeal from the Judgment of Sentence August 27, 2013
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0000867-2011

BEFORE:  ALLEN, J., LAZARUS, J., and MUNDY, J.

MEMORANDUM BY MUNDY, J.:                    **FILED MAY 22, 2015**

Appellant, Lionel Lawrence, appeals from the August 27, 2013 aggregate sentence of two to four years' imprisonment, followed by two years' probation, after a jury found him guilty of forgery, theft by deception, and securing execution of documents by deception.[1]  After careful review, we affirm.

The relevant factual and procedural history of this case follows.  In 2010, Appellant was living with 86 year-old Annie Benn.  N.T., 3/20/13 at 7, 24.  Appellant's mother lived across the street from Benn, and Appellant, beginning at some point between 1999 and 2004, began assisting Benn with household chores and helped her complete various errands while he

---

[1] 18 Pa.C.S.A. §§ 4101, 3922(a)(1), and 4114, respectively.

gradually moved himself into Benn's home.[2] *Id.* at 8, 55. In 2008, Jackie Farmer, Benn's daughter, became aware of possible fraudulent activity on Benn's bank account at Wachovia (the Bank). *Id.* at 13-14. As a result, Benn closed her account with the Bank and opened a new one with Farmer as a joint cosigner. *Id.* Farmer then took responsibility over monitoring Benn's finances and paying her bills. *Id.* at 14.

In the summer of 2010, while Farmer was visiting Benn, the Bank called Benn about her account. *Id.* at 16. Farmer accompanied Benn to the bank, and the bank showed Farmer and Benn copies of checks that the bank's fraud department had identified as suspicious. *Id.* at 17, 23. The five checks presented to Farmer and Benn totaled $3,290.00. *See id.* at 18-22. Each check was addressed to and endorsed by Appellant. *Id.* The signature line on each of the checks read "Annie M. Benn," however, Benn had not produced the signatures. *Id.*

After discovering the fraudulent checks, Farmer discovered the beneficiary on her mother's life insurance policy had been changed to Appellant and falsely listed Appellant as Benn's grandson. *Id.* at 31-32. The signature, "Annie M. Benn," on the document executing the change was not Benn's. *Id.* at 33. A separate accidental insurance policy was also

---

[2] Benn's daughter testified the earliest she recalled Appellant living with her mother was in 2004, but she conceded it could have been as early as 1999 and noted it was a gradual progression. N.T., 3/20/14, at 56-57.

taken out, listing Appellant as the beneficiary of $200,000.00 worth of coverage. *Id.* at 39. Again, the signature listed on the document read, "Annie M. Benn," but Benn had not produced the signature. *Id.*

On August 10, 2010, Farmer accompanied Benn to the police station to file a report. *Id.* at 34-35. The Commonwealth ultimately charged Appellant with the aforementioned offenses as well as theft by unlawful taking, receiving stolen property, identity theft, and tampering with records.[3] Criminal Information, 1/31/11. On March 20, 2013, Appellant proceeded to a jury trial, where he represented himself with the assistance of standby counsel.[4] At the conclusion of the trial, Appellant was convicted of forgery, theft by deception, and securing execution of documents by deception. The remaining charges were either quashed or *nolle processed*. The trial court sentenced Appellant on August 27, 2013 and appointed counsel to represent Appellant on appeal. Appellant's timely post-sentence motion, filed by standby counsel, was denied by the trial court on September 30, 2013. On October 29, 2013, appointed counsel filed a timely notice of appeal. On November 1, 2013, the trial court ordered Appellant to file a concise

_____

[3] 18 Pa.C.S.A. §§ 3921(a), 3925(a), 4120(a), and 4104(a), respectively.

[4] Appellant sought to represent himself at trial. The trial court ordered a psychological evaluation of Appellant on August 11, 2011. The evaluation indicated Appellant "is competent to participate in trial and to represent himself." Trial Court Order, 9/7/11. On September 7, 2011, the trial court entered an order permitting Appellant to proceed *pro se* with the assistance of appointed, standby counsel. *Id.*; *see generally* Pa.R.Crim.P. 121.

statement of errors complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(b). On November 25, 2013, counsel for Appellant filed a statement of errors complained of on appeal and a request for an extension of time to file a supplemental statement of errors complained of on appeal following counsel's receipt of the trial transcripts. Rule 1925(b) Statement, 11/25/13; Motion for Extension of Time, 11/25/13. The trial court never ruled on counsel's request to file a supplemental statement, and counsel did not file one. On February 6, 2015, this Court remanded the case for the trial court to rule on counsel's request to file a supplemental Rule 1925(b) statement. *Commonwealth v. Lawrence*, 3044 EDA 2013 (Pa. Super. 2015) (unpublished memorandum). On April 8, 2015, the trial court granted Appellant's request and ordered Appellant to file a Rule 1925(b) statement by April 30, 2015. Trial Court Order, 4/8/15. Appellant complied and filed his counseled 1925(b) statement on April 22, 2015. This matter is now properly before this Court.[5]

On appeal, Appellant raises the following issues for our review.

> [I.] Was the properly admissible evidence sufficient as a matter of law to support the convictions for theft by deception, forgery, and securing execution of documents by deception?
>
> [II.] Did the [trial] court abuse its discretion and cause [] [A]ppellant undue prejudice when the lower

---

[5] The trial judge who presided over Appellant's trial has retired from the bench, and no Rule 1925(a) opinion was authored.

- 4 -

court permitted a police detective to testify in front of the jury that [A]ppellant was in prison in another county when he was arrested for the crimes at issue in the case *sub judice*, when, in fact, [A]ppellant was arrested in his mother's home and the detective referred to a report indicating the same immediately before falsely stating to the jury that [A]ppellant was incarcerated in prison in another county at the time of his arrests?

Appellant's Brief at 5.

We employ a well-settled standard of review over claims challenging the sufficiency of the evidence. "In reviewing the sufficiency of the evidence, we consider whether the evidence presented at trial, and all reasonable inferences drawn therefrom, viewed in a light most favorable to the Commonwealth as the verdict winner, support the jury's verdict beyond a reasonable doubt." ***Commonwealth v. Patterson***, 91 A.3d 55, 66 (Pa. 2014) (citation omitted), *cert. denied*, **Patterson v. Pennsylvania**, 135 S. Ct. 1400 (2015). "The Commonwealth can meet its burden by wholly circumstantial evidence and any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances." ***Commonwealth v. Watley***, 81 A.3d 108, 113 (Pa. Super. 2013) (*en banc*) (internal quotation marks and citation omitted), *appeal denied*, 95 A.3d 277 (Pa. 2014). As an appellate court, we must review "the entire record … and all evidence actually received[.]" **Id.** (internal quotation marks and citation omitted). "[T]he trier of fact while

passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence." *Commonwealth v. Orie*, 88 A.3d 983, 1014 (Pa. Super. 2014) (citation omitted), *appeal denied*, 99 A.3d 925 (Pa. 2014). "Because evidentiary sufficiency is a question of law, our standard of review is *de novo* and our scope of review is plenary." *Commonwealth v. Diamond*, 83 A.3d 119, 126 (Pa. 2013) (citation omitted), *cert. denied, Diamond v. Pennsylvania*, 135 S. Ct. 145 (2014).

Appellant challenges the sufficiency of the evidence supporting his convictions for forgery, theft by deception, and securing execution of documents by deception in the following manner.

> With respect to forgery, there is no evidence in the trial record that [Appellant] acted without [] Benn's authority. With respect to [the] theft by deception charge, there is no evidence in the trial record that [Appellant] deceived anyone. Finally, with respect to the charge of securing execution of documents by deception, there is no evidence in the trial record that [Appellant] caused another person to execute any document – to the contrary, all evidence indicates that [Appellant] executed all documents which the Commonwealth alleges support the charge.

Appellant's Brief at 14. The crimes for which Appellant was convicted are codified as follows.

**§ 4101. Forgery**

**(a) Offense defined.**—A person is guilty of forgery if, with intent to defraud or injure anyone, or with

knowledge that he is facilitating a fraud or injury to be perpetrated by anyone, the actor:

(1) alters any writing of another without his authority;

(2) makes, completes, executes, authenticates, issues or transfers any writing so that it purports to be the act of another who did not authorize that act, or to have been executed at a time or place or in a numbered sequence other than was in fact the case, or to be a copy of an original when no such original exists;

…

18 Pa.C.S.A. § 4101(a)(1)-(2).

## § 3922.  Theft by deception

**(a) Offense defined.**-- A person is guilty of theft if he intentionally obtains or withholds property of another by deception.  A person deceives if he intentionally:

(1) creates or reinforces a false impression, including false impressions as to law, value, intention or other state of mind; but deception as to a person's intention to perform a promise shall not be inferred from the fact alone that he did not subsequently perform the promise;

…

*Id.* at § 3922(a)(1).

## § 4114.  Securing execution of documents by deception

A person commits a misdemeanor of the second degree if by deception he causes another to execute any instrument affecting or purporting to affect or

> likely to affect the pecuniary interest of another person.

*Id.* at § 4114.

At trial, Farmer identified five separate checks totaling $3,290.00 that were made out to Appellant.[6] N.T., 3/20/13, at 16-24. Farmer testified that the signature on the front of each check read Benn's name, but the signatures were not generated by Benn. *Id.* She further testified that she recognized each signature reading Benn's name to be the handwriting of Appellant. *Id.* Similarly, on the document that changed Benn's life insurance beneficiary from Farmer to Appellant, and the additional life insurance policy which listed Appellant as the beneficiary, Benn did not produce the signatures that read "Annie M. Benn". *Id.* at 31-33; 39.

Appellant does not dispute that he executed the checks and documents at issue, but he argues that the evidence is insufficient to sustain his conviction for forgery because there was no evidence that Appellant "acted without [] Benn's authorization[]" by signing her name on the checks, change of beneficiary form, and the additional insurance coverage. Appellant's Brief at 15-17. We disagree.

When the bank notified Benn of the possible fraudulent activity with her checking account, Benn expressed disbelief that such sums could be

---

[6] At the time of trial, Benn was deceased. Appellant did not object to Farmer's testimony.

missing and "didn't understand how $3,500[.00] could be missing from her account." N.T., 3/20/13, at 16. Benn then went to the bank and filed a claim regarding the five fraudulent checks. *Id.* at 24. Two weeks later, Benn filed a police report. *Id.* at 35. Further, after Benn learned that her life insurance policy was changed to name Appellant as the beneficiary, she changed the policy back to make her daughter, Farmer, the beneficiary. *Id.* at 37. Likewise, upon learning an additional policy was effected that named Appellant the beneficiary of $200,000.00 worth of coverage, Benn cancelled the policy. *Id.* at 40.

Viewing the evidence in the light most favorable to the Commonwealth, we conclude there was sufficient evidence presented to prove Appellant acted without Benn's authority in signing her name to her checks, changing the insurance beneficiary on her life insurance account, and taking out a separate insurance policy naming himself as the beneficiary. **See Patterson**, **supra**. The jury was free to credit Farmer's testimony and infer that the circumstances attendant to Benn's discovery of the state of her financial matters, *i.e.*, filing a police report and changing the insurance policies, proved beyond a reasonable doubt that Appellant acted without Benn's authorization. **See id.**, **supra**; **Watley**, **supra**.

With respect to his conviction for theft by deception, Appellant concedes the evidence established that Appellant wrote and deposited checks from Benn's account. Appellant's Brief at 18. He contends that he

did not obtain the funds by deception, however, because he argues the funds were used to make repairs to Benn's home, and Benn authorized one check that Appellant wrote to himself for the purpose of giving Appellant's godchild a gift. *Id.* at 18-19. We reject this argument as well. While the checks that Appellant signed Benn's name on included various notes on the "memo line," suggesting the purpose of each check, there was no evidence Benn knew Appellant had written these checks or authorized him to do so for repairs in her home or any other purpose. *See* N.T., 3/20/13, at 18-22. The jury was free to weigh the evidentiary value of such self-serving evidence and conclude Appellant deceived Benn in the process of writing and cashing checks from her account. *See Orie*, *supra*.

In Appellant's final sufficiency challenge, he argues the Commonwealth failed to prove securing execution of documents by deception beyond a reasonable doubt because the Commonwealth "must produce evidence that **someone other than [Appellant]** signed a document." Appellant's Brief at 20 (emphasis in original). Appellant supports his argument as follows.

> In this case all of the evidence presented- indeed the Commonwealth's entire theory of its case- was that [Appellant] signed [] Benn's name to the checks and insurance documents. Moreover, [Appellant] admitted doing so …. However, the linchpin in the Commonwealth's case is fatal to the charge of securing execution of documents by deception.

*Id.* While Appellant aptly points out the Commonwealth proved Appellant signed his name to the insurance documents and checks that gave rise to his

convictions, he ignores other evidence adduced at trial supporting the instant charge. Specifically with regard to the insurance policies, Farmer testified as follows.

[Commonwealth]:

Q. … After you learned of the Crown, Cork, & Seal document [which changed the beneficiary on Benn's life insurance from Farmer to Appellant], did you and your mother take any action in regards to that specifically?

[Farmer]:

A. Yes.

Q. What did you do at that time?

A. She changed the beneficiary back to the original.

…

Q. Take a look at C-10. What's that?

A. Crown, Cork, & Seal Insurance change of beneficiary form.

Q. Did they send this to you after you discovered the previous change?

A. They sent the form that had to be filled out that we returned to them.

Q. Did you fill this form out?

A. Yes.

Q. Who did you fill it out with?

A. My mother.

…

- 11 -

Q. Without getting into specifics, who is listed as the beneficiary?

A. I am, Jackie Farmer.

Q. Who is contingent?

A. My son, Akin.

…

N.T., 3/20/13, at 36-38. Further, Benn canceled the additional insurance policy for $200,000.00 upon her knowledge of its existence. *Id.* at 39. The evidence of record belies Appellant's argument that his actions cannot be the basis for the charge. As a direct result of Appellant's actions in changing Benn's life insurance policy and taking out an additional policy, Benn executed instruments changing the former policy and terminating, in its entirety, the latter. *See id.* at 36-39. Appellant does not suggest such changes to insurance policies do not affect, purport to affect, or are likely to affect the pecuniary interest of another person. *See* Appellant's Brief at 19-20. Rather, his sole argument is the Commonwealth failed to show that his deception caused **another** to execute instruments. *See id*.; *accord* 18 Pa.C.S.A. § 4114. Viewing the evidence received in the light most favorable to the Commonwealth, the evidence establishes that Benn indeed executed documents affecting her pecuniary interest as a result of Appellant's

deception.[7]  Therefore, Appellant's entire argument on this charge must fail.

**See Patterson**, **supra**.  Moreover, the jury was free to infer that Appellant's forgeries in changing Benn's life insurance policy and taking out a new policy, coupled with Benn's subsequent actions in response thereto, proved beyond a reasonable doubt that as a result of Appellant's actions, the insurance companies executed instruments affecting Benn's pecuniary interest.  **See Watley**, **supra**.

In Appellant's second issue, he charges the trial court with error for its failure to provide a curative instruction to the jury following inaccurate testimony that Appellant was in jail at the time of his arrest.  Appellant's Brief at 21.  "In deciding whether a trial court erred in refusing to give a jury instruction, we must determine whether the court abused its discretion or committed an error of law."  **Commonwealth v. Clouser**, 998 A.2d 656, 658 (Pa. Super. 2010) (citation omitted), *appeal denied*, 26 A.3d 1100 (Pa. 2011).

The challenged testimony was elicited from Detective Margarita Nix of the Philadelphia Police Department.

[Commonwealth]:

Q.  Where was that [sic] you arrested [] [Appellant]?

---

[7] We further observe Appellant, who bears no familial relationship to Benn, falsely identified himself as Benn's grandson on her life insurance policy. N.T., 3/20/13, at 31-32.

[Detective Nix]:

A. Dolphin [sic] County Prison.

Q. When you arrested [] [Appellant]?

[Appellant]:

Objection, Your Honor. Objection. You arrested me at my mother's house, not Dolphin [sic] County Prison.

[Trial Court]:

Is that your objection?

[Appellant]:

Yes, yes.

…

[The Commonwealth]:

… Did there become a time when he was in your custody?

[Appellant]:

Objection, Your Honor. I want her to state where she arrested me at.

[Trial Court]:

It might be in the record. It might not be. You'll have your chance, just wait.

N.T., 3/20/13, at 79-80. Based on the above-cited testimony, Appellant contends that "[t]he admission of this evidence without a curative instruction violates an unassailable, fundamental precept of Pennsylvania criminal law and warrants the remedy of a new trial." Appellant's Brief at 25.

Following the Commonwealth's direct examination of Detective Nix, Appellant cross-examined her as follows.

[Appellant]:

Q. The first question is, when you came to arrest me, do you know where did you arrest me?

[Detective Nix]:

A. Mr. Lawrence, you pointed out that I arrested you in your home. I would have to review the PARS report. Because I did have -- I was scheduled to arrest you at Dolphin [sic] County Prison. You must have been released, that's why I arrested you at your home.

[Appellant]:

I object to that.

[Trial Court]:

Overruled.

[Appellant]:

Q. You are saying you're not sure where you arrested me at?

[Detective Nix]:

A. At this moment, no.

…

Q. When you arrested me at[?]

A. I am not sure if [when] I arrested you [you] were incarcerated for a while or at your home.

[Appellant]:

- 15 -

Objection.

[Trial Court]:

Overruled. Ask your next question.

N.T., 03/20/13 at 94-96.

Despite objecting to the answers given by Detective Nix, who ultimately conceded uncertainty as to where she arrested Appellant, Appellant never sought a curative instruction from the trial court. Therefore, Appellant has failed to preserve this issue for our review, and we conclude it is waived. *See Commonwealth v. Johnson*, 42 A.3d 1017, 1026 n.5 (Pa. 2012) (concluding the appellant waived his challenge to the trial court's failure to give a contemporaneous curative instruction for failure to request one and rejecting appellant's position that the trial court was required to provide a curative instruction *sua sponte*); *accord* Pa.R.A.P. 302(a).

Based on the foregoing discussion, we conclude all of Appellant's challenges are meritless or waived. Accordingly, we affirm the August 27, 2013 judgement of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/22/2015

- 16 -