J-A03042-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CATHERINE DENISE REASON | : | |
| | : | |
| Appellant | : | No. 29 MDA 2020 |

Appeal from the Judgment of Sentence Entered October 24, 2019
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0007143-2018

BEFORE:  LAZARUS, J., KUNSELMAN, J., and MURRAY, J.

MEMORANDUM BY LAZARUS, J.:                    **FILED FEBRUARY 19, 2021**

Catherine Denise Reason appeals from the judgment of sentence, imposed in the Court of Common Pleas of York County, after a jury convicted her of disorderly conduct.[1]  Upon review, we affirm.

The trial court set forth the relevant facts of this case as follows:

[O]n November 15, 2018, [Pennsylvania State Trooper Andrew Hertzog] was on duty [while] it was snowing with icy conditions on the roadway. [N.T. Jury Trial], 9/18/19, at 59.[] Trooper Hertzog stated that there were multiple inches of snow covering the roadway.  [*Id.*]    Around 10:19 a.m., the trooper had responded to a vehicle crash and he observed tire tracks going through the snow and into a field next to a residence.  [*Id.*] at 60. The homeowner advised the trooper that the driver of the disabled vehicle was inside of his residence.  [*Id.*]  The trooper then made contact with the driver and identified her as Catherine Reason, the Appellant.  [*Id.*] at 61.  [Reason] advised Trooper Hertzog that she had fishtailed off of the roadway and struck a pine tree.  [*Id.*] at 61-62.  Trooper Hertzog testified that, with [Reason's] consent,

_____

[1] 18 Pa.C.S.A. § 5503(a)(1).

he searched her vehicle for vehicle and insurance information, but he was unable to locate the documents. [*Id.*] at 62. The insurance was verified via telephone and then a tow truck was called. [*Id.*] at 62.

Upon the arrival of the tow truck, they attached a tow cable and began to winch the vehicle. [*Id.*] at 63. The trooper observed [Reason] to be standing close to the winch cable and advised her to stand back for her safety, at which point [Reason] told the trooper not to touch her. [*Id.*] at 64. Trooper Hertzog conveyed that he had not been touching [Reason] and that she did temporarily step away. [*Id.*] at 64. The trooper then turned his attention to any potential danger from traffic that was obstructed by the tow truck that had [b]locked both lanes of travel. [*Id.*] at 65. When the trooper returned his attention to the winching operation[,] he observed [Reason] re-approaching her vehicle and, at this point, she ignored the trooper's remonstrations that she move back. [*Id.*] Instead of heeding the Trooper, [Reason] entered the driver's seat of her vehicle and stared straight ahead— completely ignoring the trooper's repeated commands to exit the vehicle for her own safety. [*Id.*] at 65-66. The trooper related that the driver's door was open. The trooper testified that he placed his hand on [Reason's] bicep and told her once more to exit the vehicle. [*Id.*] at 66. This was met with [Reason] turning onto her right side and kicking the trooper with both feet in the chest. [*Id.*] The trooper was then pushed to the back of the vehicle and the tow truck operator stepped in, which resulted in [Reason] punching him in the face. [*Id.*] The trooper then dragged [Reason] out of the vehicle by her leg. [*Id.*] Trooper Hertzog testified that he required assistance in detaining [Reason]. [*Id.*] The trooper and both tow operators attempted to get [Reason's] hands behind her back, which took one to two minutes before [Reason] was detained. [*Id.*] at 67. Trooper Hertzog asked the tow operators to hold onto [Reason] whilst he cleaned the blood of one of the tow [operators] off of the trooper's face and to report to York Dispatch that the vehicle crash had turned into an assault. [*Id.*] The trooper observed a bleeding laceration under Mr. Joseph Yeater's eye. [*Id.*] at 68. The trooper also received a minor cut on his face. [*Id.*] at 69. The testimony is slightly unclear as to whether the trooper indicated that *after* [Reason] was handcuffed, it took one to two minutes to resolve the situation or if the trooper was again relating the time it took to handcuff [Reason]. [*Id.*] at 70-71. Additionally, the altercation occurred approximately five to ten minutes after the arrival of the

tow truck. [*Id.*] at 75. What is clear is that, with the tow truck blocking the roadway, traffic had backed up and had begun to turn around—as was demonstrated in the dashcam video. [*Id.*] at 71-72. The trooper described [Reason's] demeanor as uncooperative throughout the encounter. [*Id.*] at 72. There was some clarification when the trooper testified [that Reason's] early demeanor, which was not agitated, changed when the trooper attempted to hand her a citation for roadways laned for travel. [*Id.*] at 77. The trooper had attempted to explain to [Reason] that she had ten days to respond to avoid having her license suspended or a traffic warrant issued for her arrest. [*Id.*] at 78. This was the point when [Reason] returned to her vehicle and entered it. [*Id.*] Responding to cross-examination, the trooper agreed that he had, eventually, issued five or seven citations. [*Id.*]

Joseph Yeater took the stand and testified that he is a tow truck operator who was called to the scene for a car being off the roadway. [*Id.*] at 80. Mr. Yeater explained to [Reason] that he had to tow her vehicle to the shop since she had conveyed that she had no means of paying for the tow back to the roadway. [*Id.*] at 82. Mr. Yeater testified that [Reason] had entered her vehicle at the start of the tow, but that she exited when asked to do so. [*Id.*] at 84. However, [Reason] stood in the way of her vehicle being winched and refused entreaties from Mr. Yeater to move[. E]ventually, the trooper had to ask her to move. [*Id.*] at 83-84. Once the vehicle was on the roadway, but perpendicular to it, [Reason] reentered the vehicle and was, according to Mr. Yeater, "irate and belligerent with the trooper." [*Id.*] And, Mr. Yeater added, she "[h]ad been before this—she got in the car[.]" [*Id.*] Mr. Yeater asked [Reason] to exit her vehicle and she refused to do so and when the trooper inserted himself[,] then [Reason] shouted that her phone was missing and stolen and that she did not have to exit the vehicle. [*Id.*] at 85. Mr. Yeater described the trooper as being very polite while asking [Reason] to alight from her vehicle. [*Id.*] Once the trooper informed [Reason] that he would have to arrest her if she did not exit the vehicle and reached towards her[,] then [Reason] kicked the trooper in the chest. [*Id.*] Mr. Yeater attempted to assist the officer by grabbing [Reason's] shirt, which resulted in [Reason] flailing her arms and connecting with Mr. Yeater who received a cut to his eye. [*Id.*] at 85-86. Mr. Yeater testified that he sought no medical attention and that he has a slight scar from the incident. [*Id.*] at 86. On cross[-]examination, Mr. Yeater

- 3 -

indicated that [Reason] entered the car and refuse[d] to exit it [for] two to three minutes. Per Mr. Yeater, [it took] an additional two to three minutes [to] handcuff[] [Reason once she] was out of the vehicle. [*Id.*] at 89. Finally, Mr. Yeater indicated that traffic was tied up in [both] direction[s at] the scene and "the traffic was held up longer than it had to be due to the circumstances of getting the car off the road *and then dealing with her.*" [*Id.*] at 91 [(emphasis added by trial court)].

[Reason] took the stand and testified that[,] on the date in question[,] she was returning from the burial of a family member. [*Id.*] at 97-98. [Reason] said that[,] as the road conditions had deteriorated, she ended up swerving down an embankment. [*Id.*] at 98. Regarding the towing, [Reason], seemingly disputing whether she had been in any danger, claimed to have been ten feet from the vehicle while it was being winched. [*Id.*] at 101-02. [Reason] then testified that, with the permission of the trooper, she attempted to locate her cellphone within her vehicle. [*Id.*] at 102. [Reason] claimed that when she queried Mr. Yeater's assistant[, the assistant] stated [Reason] was accusing him of theft and that he then subjected [Reason] to a fusillade of abusive language in which [he] referred to [Reason] as a bitch and the "n word." [*Id.*] at 102-03. [Reason] further claimed that the assistant suggested that he should beat her up and that he grabbed at her. [*Id.*] at 103. [Reason] then testified that the trooper assisted the tow truck operators by removing her from the vehicle. [*Id.*] According to [Reason], the tow truck operators then "proceed[ed] to beat [Reason], kick [Reason], putting his knee in [Reason's] neck, kicking [Reason] with compact [sic] boots and all." [*Id.*] at 104. [Reason] stated that the altercation itself felt to her like it took "forever." [*Id.*] [Reason] indicated her belief that the event transpired around 10:00 in the morning and that she was not transported to the hospital until 6:00 p.m. [*Id.*] On cross-examination, [Reason] stated that the familial burial was not on the date in question. [*Id.*] at 106. [Reason] indicated that she was also mistreated at the hospital [as a result of information related to the staff by Trooper Hertzog]. [*Id.*] at 109.

Trooper Hertzog was called as a rebuttal witness and he testified that he never gave [Reason] permission to reenter her vehicle. [*Id.*] at 110. The trooper testified that, due to traffic conditions, it took one[-]and[-]a[-]half to two hours to reach the hospital. [*Id.*] at 111. The trooper testified that he picked the initial

- 4 -

roadways citation in order to cut [Reason] a break and to avoid alternative citations that would have carried points on [Reason's] license. [*Id.*] The trooper indicated that [Reason's] inspections and emissions stickers were expired. [*Id.*] at 112. Over the objections of the defense, the [c]ourt permitted the trooper to relate that driving without a license does not carry points, but that it would have resulted in a fine of approximately $130.00 to $140.00. [*Id.*]

Mr. Yeater was recalled and he denied using any racial slurs against [Reason]. [*Id.*] at 115. He also denied kicking her. [*Id.*] Mr. Yeater testified that his assistant did not kick [Reason] either. [*Id.*] at 116.

Trial Court Opinion, 6/17/20, at 3-9.

Reason was originally charged with aggravated assault,[2] simple assault,[3] and disorderly conduct. The Commonwealth subsequently *nolle prossed* the aggravated assault charge and added a charge of summary harassment.[4] On September 19, 2019, a jury convicted Reason of disorderly conduct and acquitted her of simple assault. The trial court also acquitted Reason of the summary harassment charge. On October 24, 2019, the trial court sentenced Reason to one year of probation with costs of prosecution. Reason filed post-sentence motions, which the court denied, following a hearing, on November 27, 2019. Reason filed a timely notice of appeal, followed by a court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal.

---

[2] 18 Pa.C.S.A. § 2702(a)(3).

[3] 18 Pa.C.S.A. § 2701(a).

[4] 18 Pa.C.S.A § 2709(a)(1).

On appeal, Reason raises the following issue for our review:

Did the trial court err in overruling [] Reason's objection to evidence on the penalty for driving with an expired license, for which Reason was not on trial, where the evidence had no proper purpose and served only to give the jury an improper reason to convict?

Brief of Appellant, at 4.

Reason's claim challenges the trial court's admission of evidence. It is well-settled that we will only reverse a trial court's evidentiary rulings upon a finding of an abuse of discretion. *Commonwealth v. Talbert*, 129 A.3d 536, 539 (Pa. Super. 2015), citing *Commonwealth v. Flamer*, 53 A.3d 82, 86 (Pa. Super. 2012). An abuse of discretion is not merely an error in judgment, but constitutes an overriding misapplication of the law, manifestly unreasonable judgment, or the result of bias, prejudice, ill-will, or partiality. *Id.*

Reason's claim relates to the following exchange that took place during the Commonwealth's rebuttal examination of Trooper Hertzog:

Q: [A]t the time that you gave her the initial citation, why did you pick the roadway citation?

A: I picked the roadways because, like I said, that has no points on it and that's a way of giving, you know, the defendant a break.

Other citations such as Pennsylvania [V]ehicle Code 3361, driving a vehicle at a safe speed, carries points on the operator's license. That would also be applicable. So to answer your question, it was to give a break.

Q: What did you notice about the inspection sticker?

A:  The inspection sticker[,] as well as I believe[,] the emissions sticker were both expired, and Ms. Reason's license was also expired.

Q:  And what would the penalty be for driving without a license?

[Defense Attorney]:  Objection.  Relevance.

The Court:  I'm sorry?

[Defense Attorney]:  Your Honor, I'm objecting as to the relevance of this.

The Court:  I'll overrule.  You may answer that question.

The Witness:  Could you say the question again?

By [Commonwealth Attorney]:

Q:  What's the penalty for driving without a license?

A:  It depends on the judge's discretion, but that citation doesn't carry points, but it's another approximately [$]130, $140 citation.

Q:  And so you said . . . the citation that you did before the whole incident happened[,] that was to give her a break?

A:  Correct.

N.T. Trial, 9/18/19, at 111-13 (unnecessary capitalization omitted).

Reason argues that the trial court erred in allowing Trooper Hertzog to testify regarding the penalty for driving on an expired license.  She asserts that such testimony was irrelevant, as she was not on trial for driving with an expired license; Reason alleges the evidence served no proper purpose and provided an improper basis for the jury's verdict.

The Commonwealth argues, and the trial court found, that the evidence was admissible under the *res gestae* exception, as it forms a part of the complete story of the crime.

Pennsylvania Rule of Evidence 404(b)(1) provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with that character." Pa.R.E. 404(b)(1). The *res gestae* exception to this general proscription is a special circumstance in which evidence of other crimes may be relevant and admissible "where such evidence was part of the chain or sequence of events which became part of the history of the case and formed part of the natural development of the facts." **Commonwealth v. Green**, 76 A.3d 575, 583–84 (Pa. Super. 2013). Such evidence is admissible "to complete the story of the crime on trial by proving its immediate context of happenings near in time and place." **Id.** (citation omitted).

Here, Reason did not object to the admission of Trooper Hertzog's testimony on the basis that it constituted inadmissible prior bad acts evidence under Rule 404(b). Rather, she simply challenged its relevance. Accordingly, the *res gestae* exception is inapplicable and both the Commonwealth and trial court's reliance upon the doctrine is misplaced. However, because the evidence was, in fact, relevant, and Reason has not established that it caused the jury to render a verdict on an improper basis, we nonetheless conclude that the trial court did not err in admitting the testimony. **See Commonwealth v. Clouser**, 998 A.2d 656, 661 n.3 (Pa. Super. 2010) ("It is well-settled that this Court may affirm on any basis.").

Under Pennsylvania Rule of Evidence 402, "all relevant evidence is admissible," and evidence that is not relevant is inadmissible. Pa.R.E. 402. Relevant evidence is defined as that which "(a) has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Pa.R.E. 401. The court may exclude relevant evidence if the danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence outweighs its probative value. Pa.R.E. 403.

> Evidence will not be prohibited merely because it is harmful to the defendant. [E]xclusion is limited to evidence so prejudicial that it would inflame the jury to make a decision based upon something other than the legal propositions relevant to the case. . . . This Court has stated that it is not required to sanitize the trial to eliminate all unpleasant facts from the jury's consideration where those facts are relevant to the issues at hand[.]

*Commonwealth v. Kouma,* 53 A.3d 760, 770 (Pa. Super. 2012), quoting *Commonwealth v. Page*, 965 A.2d 1212, 1221 (Pa. Super. 2009).

Here, we conclude that the challenged evidence was relevant. At trial, Reason testified that Trooper Hertzog instigated the altercation by engaging in harassing behavior and stood by while the two tow truck drivers beat her and called her offensive names. In questioning Trooper Hertzog on rebuttal, the Commonwealth sought to call Reason's version of events into question by eliciting from Trooper Hertzog testimony that he had, in actuality, been treating her considerately and, in fact, attempted to "cut her a break" by issuing only one citation carrying a minor penalty. This testimony,

controverting Reason's claim and tending to show that Trooper Hertzog had actually been attempting to treat her kindly prior to the altercation, was relevant to countering Reason's defense that her actions were provoked by Trooper Hertzog's behavior.

Moreover, Reason's argument that Trooper Hertzog's testimony led the jury to convict her on an improper basis is meritless. We fail to discern how a brief reference to the fact that Reason could have been cited[5] with an offense carrying a relatively modest penalty of $130-$140 could have led the jury to convict her of disorderly conduct as punishment for having "gotten away with something." Brief of Appellant, at 22. In fact, defense counsel first raised the topic of Reason's other traffic offenses by eliciting testimony from Trooper Hertzog on cross-examination regarding the actual number of citations he ultimately issued to Reason. *See* N.T. Jury Trial, 9/18/19, at 78 ("Q: Trooper, you ended up actually issuing more than one citation though; isn't that correct? A: That's correct. Q: It was, I believe, seven. Do you recall? A: It was five or seven. I'm not sure if it was seven exactly."). The testimony complained of is certainly no more prejudicial—and arguably less so—than the testimony elicited by the defense that Reason had committed up to seven other driving infractions.

---

[5] In fact, Reason **was** ultimately cited for driving with an expired license. *See* Motion to Dismiss Pursuant to Rule 110 Compulsory Joinder, 7/5/19, at Exhibit A (Traffic Citation for "Operated Vehicle Without Driver's License—Expired Within 1 Year," filed 11/23/18).

In sum, Trooper Hertzog's testimony was relevant to rebut Reason's claim that Trooper Hertzog had mistreated or victimized her prior to the altercation underlying the instant conviction, and the probative value of the testimony was not outweighed by its tendency to suggest a verdict on an improper basis.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 02/19/2021