**COMMONWEALTH of Pennsylvania,**
**Appellee**

**v.**

**Michael Allan CLOUSER, Appellant.**

Superior Court of Pennsylvania.

Argued Jan. 13, 2010.

Filed June 25, 2010.

---

John P. Neblett, Camp Hill, for appellant.

Travis L. Kendall, Assistant District Attorney, McConnellsburg, for Commonwealth, appellee.

BEFORE: STEVENS, DONOHUE, and FITZGERALD,* JJ.

OPINION BY FITZGERALD, J.:

¶ 1 Appellant, Michael Allan Clouser, appeals from the judgment of sentence entered in the Franklin County Court of Common Pleas, following his conviction of driving under the influence ("DUI") of alcohol or controlled substance (highest rate of alcohol),[1] and DUI (general impairment).[2] Appellant contends that the trial court erred in denying his request for a justification instruction. We hold the trial court erred in concluding summarily that Appellant had alternate options in escaping the perceived danger; however, Appellant failed to assert that it was necessary to drive five miles to continue escaping the danger. Accordingly, for reasons other than those proposed by the trial court, we affirm.

¶ 2 On June 28, 2009, Appellant drove his girlfriend to a tavern late in the evening. Appellant "drank several beers and had several shots of alcohol." Appellant's Brief at 6. As Appellant and his girlfriend were about to leave, Appellant went to the restroom while his girlfriend went to his car. According to Appellant, they intended for Appellant's girlfriend to drive home.

¶ 3 When Appellant's girlfriend exited the tavern, she saw another woman sitting

---

* Former Justice specially assigned to the Superior Court.

1. 75 Pa.C.S. § 3802(c).

2. 75 Pa.C.S. § 3802(a)(1).

in what she believed was Appellant's car. She demanded that the woman exit the car, which culminated into a physical fight involving numerous people. Appellant, upon seeing his girlfriend, also became involved in the fight. At some point, he alleged that he was hit on the head with a hard object. Appellant averred that as the crowd became larger, the tavern owner urged him to leave in order to avoid a police presence at the tavern.

¶ 4 Appellant drove away with his girlfriend. Approximately 4.8 miles away, his car became stuck in a ditch. The police arrived at the scene and found an injured Appellant and his girlfriend a short distance from the car. Appellant and his girlfriend received treatment at a hospital. A blood test revealed his blood-alcohol ("BAC") level at 0.19%.

¶ 5 At trial, Appellant requested a justification charge, claiming that he had to flee the tavern because he faced imminent danger there. The trial court refused to give the justification charge. A jury convicted Appellant of the above crimes, and the trial court sentenced him to one to five years' imprisonment. This timely appeal followed, along with proper compliance with Pa.R.A.P. 1925. The trial court also granted Appellant a stay of his sentence pending disposition of the instant appeal.

¶ 6 Appellant raises the following claim on appeal:

Whether the trial court committed reversible error when it refused to allow the jury to be instructed on, or to consider, [Appellant]'s justification defense?

Appellant's Brief at 5.

¶ 7 Appellant argues that he presented sufficient evidence to warrant a justification instruction. He claims that the trial court should have permitted the jury to consider whether the tavern crowd posed an imminent danger, and that there was no other legal alternative for avoiding the harm. He contends that the trial court's proffered alternatives were not practical in his situation. Appellant concludes that the trial court erred in denying his request for a justification instruction. Although we agree in part that the trial court erred in its analysis, we disagree that Appellant was entitled to a justification instruction.

In deciding whether a trial court erred in refusing to give a jury instruction, we must determine whether the court abused its discretion or committed an error of law. Where a defendant requests a jury instruction on a defense, the trial court may not refuse to instruct the jury regarding the defense if it is supported by evidence in the record.[6] When there is evidence to support the defense, it is for the trier of fact to pass upon that evidence and improper for the trial judge to exclude such consideration by refusing the charge.

---

[6] We note that [s]uch evidence may be adduced by the defendant as part of his case, or, conceivably, may be found in the Commonwealth's own case in chief or be elicited through cross-examination.

*Commonwealth v. DeMarco*, 570 Pa. 263, 271, 809 A.2d 256, 260–61 (2002) (citations and quotation omitted).

¶ 8 Section 503 of the Pennsylvania Crimes Code provides:

(a) **General rule.**—Conduct which the actor believes to be necessary to avoid a harm or evil to himself or to another is justifiable if:

(1) the harm or evil sought to be avoided by such conduct is greater than that sought to be prevented by the law defining the offense charged;

(2) neither this title nor other law defining the offense provides exceptions or defenses dealing with the specific situation involved; and

(3) a legislative purpose to exclude the justification claimed does not otherwise plainly appear.

**(b) Choice of evils.**—When the actor was reckless or negligent in bringing about the situation requiring a choice of harms or evils or in appraising the necessity for his conduct, the justification afforded by this section is unavailable in a prosecution for any offense for which recklessness or negligence, as the case may be, suffices to establish culpability.

18 Pa.C.S. § 503.

¶ 9 The seminal case regarding a trial court's decision to grant or deny a justification charge is *Commonwealth v. Capitolo*, 508 Pa. 372, 498 A.2d 806 (1985). The *Capitolo* Court, in examining Section 503 in relation to a defendant's entitlement to a justification instruction, held:

[T]he actor must reasonably believe that the conduct chosen was necessary to avoid the greater threatened harm or evil. Because the harm must be real, and not an imagined, speculative, or non-imminent harm, the actions taken to avoid the harm must support a reasonable belief or inference that the actions would be effective in avoiding or alleviating the impending harm.

In order, then, to be entitled to an instruction on justification as a defense to a crime charged, the actor must first offer evidence that will show:

(1) that the actor was faced with a clear and imminent harm, not one which is debatable or speculative;

(2) that the actor could reasonably expect that the actor's actions would be effective in avoiding this greater harm;

(3) that there is no legal alternative which will be effective in abating the harm; and

(4) that the Legislature has not acted to preclude the defense by a clear and

deliberate choice regarding the values at issue.

As with any offer of proof, it is essential that the offer meet a minimum standard as to each element of the defense so that if a jury finds it to be true, it would support the affirmative defense—here that of necessity. This threshold requirement is fashioned to conserve the resources required in conducting jury trials by limiting evidence in a trial to that directed at the elements of the crime or at affirmative defenses raised by the defendant. Where the proffered evidence supporting one element of the defense is insufficient to sustain the defense, even if believed, the trial court has the right to deny use of the defense and not burden the jury with testimony supporting other elements of the defense.

*Id.* at 378–79, 498 A.2d at 809. It is the defendant's burden to proffer sufficient evidence for each of the *Capitolo* factors. *See Commonwealth v. Manera*, 827 A.2d 482, 485 n. 7 (Pa.Super.2003) ("Of course, the fact that a defense is theoretically available for a given crime does not mean that the Commonwealth must disprove justification in every case. Because justification is an affirmative defense, the defendant has the burden of asserting an appropriate offer of proof in order to be entitled to a jury instruction on justification.").

¶ 10 In *Commonwealth v. Billings*, 793 A.2d 914 (Pa.Super.2002), this Court addressed the type of alternative action which may satisfy the third *Capitolo* factor. In *Billings*, a police officer saw a car parked in the middle of a street. *Id.* at 915. When the officer turned around to approach the car, he observed the car move. *Id.* The officer observed the car cross the yellow lines and swerve. *Id.* The officer stopped the car and found the ap-

pellant driving the car with a passenger. *Id.* Upon questioning, the appellant indicated that the passenger was the original driver, but she could not continue to drive because she was too upset after hitting an animal. *Id.* The appellant subsequently registered a BAC of 0.25%. *Id.* At trial, Appellant requested a justification instruction, but the trial court refused to give it. *Id.* A panel of this Court thereby addressed the appellant's *Capitolo* evidence:

> Appellant also fails the "no alternative" portion of the test. Appellant testified that he was in the car when his companion hit a small animal and became too upset to drive. Even if Appellant faced imminent harm by oncoming traffic, he would still not be justified in driving the car home. **He would, at most, be justified, out of necessity, in parking the car on the side of the road so as not to cause an accident. Appellant had other reasonable options to driving the vehicle while intoxicated. For example, he could have activated the emergency flashers and given his companion an opportunity to regain her composure.** Clearly, the defense of necessity was not met.

*Id.* at 916–17 (emphasis added). The *Billings* Court, therefore, confirmed that a defendant may not rely solely on the existence of a legal alternative; rather, the defendant must also prove that he took only the **minimum** action necessary to avoid the harm. *See id.* (noting that the defendant could have avoided the harm simply by parking the car on the side of the road, but failed to meet the third *Capitolo* factor when he went beyond the minimum action necessary to avoid the harm).

¶ 11 Instantly, the trial court concluded that Appellant had viable legal alternatives other than driving away from the tavern. The court found that Appellant "could have run back into the bar, fled on foot, or he could have locked himself in the car." Trial Ct. Op. at 4. We cannot agree. If the jury believed Appellant's version of the facts as true, then running back into the tavern did not appear to be an option because the tavern owner allegedly insisted they leave, for fear of police appearing on the scene. Fleeing on foot may not have been a viable option if Appellant, who was intoxicated, and his girlfriend were fleeing from multiple people. Finally, if Appellant locked himself and his girlfriend in the car, there is no guarantee that an angry crowd still could not harm Appellant and his girlfriend. As a result, Appellant presented evidence that, if found to be true, would be sufficient to prove that he initially faced a clear and imminent harm, reasonably expected his actions would effectively avoid this greater harm, had no practical legal alternative to abate the harm effectively, and the absence of legislative authority precluding his justification defense. *See Capitolo, supra.*

¶ 12 We therefore consider the question of whether Appellant was entitled to drive away **initially** from the scene a viable jury question. *See Capitolo, supra.* As the *Billings* Court observed, however, our inquiry does not end merely at the point where Appellant drove away from the tavern, as Appellant appears to argue. *Compare* Appellant's Brief at 14 ("The second *Billings* requirement—that [Appellant] offer evidence showing that he 'could reasonably expect that' driving away 'would be effective in avoiding' the assault—is clearly established in this case." (citation omitted)), *with Billings,* 793 A.2d at 916–17 (finding that the defendant's actions went beyond the minimum necessary to avoid the imminent harm). As the evidence indicates, and Appellant confirms, Appellant drove at least 4.8 miles away, where he ultimately drove the car into a ditch. Appellant's Brief at 7. Appellant did not claim to drive a short distance in order to avoid

the crowd, then seek assistance in driving home. Appellant also did not claim that his girlfriend was incapable of taking over once Appellant had sufficiently escaped the danger, or that anyone from the tavern attempted to chase him. Finally, Appellant failed to offer evidence that there was no possibility he could safely stop less than 4.8 miles away from the tavern. Without any explanation by Appellant, we find no reason for a factfinder to conclude that Appellant had no reasonable options, within a span of 4.8 miles, to avoid driving in his extreme state of inebriation. *See Billings, supra.*

¶ 13 We thus conclude that although Appellant initially met the *Capitolo* factors upon fleeing the tavern, he failed to offer any evidence that driving at least 4.8 miles away from the tavern was the minimum action necessary to avoid the danger. Accordingly, we hold that the trial court properly denied Appellant's request for a justification instruction.[3] *See Capitolo, supra.*

¶ 14 Judgment of sentence affirmed.

¶ 15 Judge STEVENS Concurs in the Result.

---

**3.** It is well-settled that this Court may affirm on any basis. *Lucas v. Lucas,* 882 A.2d 523, 531 (Pa.Super.2005).