J.A21015/15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| PATRICK HARRISON, | : | |
| | : | |
| Appellant | : | No. 1533 EDA 2014 |

Appeal from the Order May 12, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division No(s).: MC-51-CR-0036469-2013

BEFORE: ALLEN, MUNDY, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.:                    **FILED JULY 24, 2015**

Appellant, Patrick Harrison, appeals from the order denying his petition

for writ of *certiorari* with the Philadelphia County Court of Common Pleas

following a judgment of sentence entered in the Philadelphia Municipal Court

after a bench trial and conviction for simple possession of a controlled

substance.[1]  He challenges whether the police had reasonable suspicion or

probable cause to seize him.  We affirm.

We adopt the facts and procedural history set forth by the trial court.

**See** Trial Ct. Op., 11/4/14, at 1-3.[2]  Appellant was tried and found guilty in

---

[*] Former Justice specially assigned to the Superior Court.

[1] 35 P.S. § 780-113(a)(16).

[2] We acknowledge the holding of **In re L.J.**, 79 A.3d 1073 (Pa. 2013), that
after October 30, 2013, the scope of review for a suppression issue is limited

the Municipal Court of Philadelphia County, which sentenced him to twelve months' probation on January 23, 2014. On February 22, 2014, he filed a petition for writ of *certiorari* with the Court of Common Pleas, which denied same on May 12, 2014. Appellant timely appealed on May 14, 2014, and timely filed a court-ordered Pa.R.A.P. 1925(b) statement.

Appellant raises the following issues:

> Did not the [municipal] court err when it denied [Appellant's] motion to suppress physical evidence where two police officers seized him as he was walking down the street, without reasonable suspicion or probable cause, and where [Appellant's] flight and the recovery of a jar of PCP were the fruit of an unlawful stop?

Appellant's Brief at 3.

Appellant claims that while walking outside at 10:30 p.m., a patrol car with two police officers pulled up to him and asked him to approach and remove his hands from his pockets. He contends he responded by continuing to walk, at which point one officer exited the vehicle and again ordered him to approach and remove his hands from his pockets. Appellant asserts he responded by removing his hands from his pockets but then putting them back in. He argues he made no movement and the officers did

---

to the record available to the suppression court. *Id.* at 1085, 1089 (stating holding applies to "all litigation commenced Commonwealth-wide after the filing of this decision"). Because the instant criminal complaint was filed prior to October 30, 2013, *In re L.J.* does not apply.

not discern any suspicious objects on his person that justified his seizure. We discern no basis for relief.

> Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Where the prosecution prevailed in the suppression court, we may consider only the Commonwealth's evidence and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the factual findings of the trial court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

*In re J.E.*, 937 A.2d 421, 425 (Pa. 2007) (citations omitted). In evaluating the legal conclusion drawn by the suppression court, this Court may also consider uncontradicted testimony from the suppression hearing not included in the suppression court's findings of fact. *Commonwealth v. Mendenhall*, 715 A.2d 1117, 1119 n.1 (Pa. 1998). We can also affirm on any basis. *Commonwealth v. Clouser*, 998 A.2d 656, 661 n.3 (Pa. Super. 2010).

> Initially we note that Fourth Amendment jurisprudence has led to the development of three categories of interactions between citizens and the police. The first of these is a "mere encounter" (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or to respond. The second, an "investigative detention[,]" must be supported by a reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. Finally, an arrest or "custodial detention" must be supported by probable cause.

***Commonwealth v. Ellis***, 662 A.2d 1043, 1047 (Pa. 1995) (citations and footnote omitted).

The Pennsylvania Supreme Court adopted the objective ***Jones/Mendenhall***[3] standard "in determining whether the conduct of the police amounts to a seizure or whether there is simply a mere encounter between citizen and police officer."  ***Commonwealth v. Matos***, 672 A.2d 769, 774 (Pa. 1996).

> In [***Commonwealth v. Hicks***, 253 A.2d 276 (Pa. 1969)], this Court adopted the United States Supreme Court's decision in ***Terry v. Ohio***, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968), which permits a police officer to effect a precautionary seizure where the police have a reasonable suspicion that criminal activity is afoot.  ***Terry***, and by analogy ***Hicks***, recognized that there are some instances in which an individual may not be arrested, but will still be considered to be "seized."  In ***Jones***, this Court adopted an objective standard for determining what amount of force constitutes the initiation of a ***Terry*** stop: whether a reasonable person innocent of any crime, would have thought he was being restrained had he been in the defendant's shoes.  This case, which preceded the United States Supreme Court's decision in . . . ***Mendenhall***, . . . was a precursor to the so-called "***Mendenhall***" test posited by the United States Supreme Court: "a person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed he was not free to leave."
>
> The ***Jones/Mendenhall*** standard has since been consistently followed in Pennsylvania in determining whether the conduct of the police amounts to a seizure or

---

[3] ***United States v. Mendenhall***, 446 U.S. 544 (1980); ***Commonwealth v. Jones***, 378 A.2d 835 (Pa. 1977).

whether there is simply a mere encounter between citizen and police officer.

*Id.* at 773-74 (some punctuation and citations omitted).

The Pennsylvania Supreme Court provided further guidance in applying this "totality of the circumstances" test:

> In evaluating the circumstances, the focus is directed toward whether, by means of physical force or show of authority, the citizen-subject's movement has in some way been restrained. In making this determination, courts must apply the totality-of-the-circumstances approach, with no single factor dictating the ultimate conclusion as to whether a seizure has occurred.

*Commonwealth v. Strickler*, 757 A.2d 884, 890 (Pa. 2000) (footnotes and some citations omitted). Factors examined in this totality-of-the-circumstances approach include "all circumstances evidencing a show of authority or exercise of force, including the demeanor of the police officer, the manner of expression used by the officer in addressing the citizen, and the content of the interrogatories or statements." *Mendenhall*, 715 A.2d at 1119. This Court also set forth a non-exclusive list of factors:

> [T]he number of officers present during the interaction; whether the officer informs the citizen they are suspected of criminal activity; the officer's demeanor and tone of voice; the location and timing of the interaction; the visible presence of weapons on the officer; and the questions asked. Otherwise inoffensive contact between a member of the public and the police cannot, as a matter of law, amount to a seizure of that person.

*Commonwealth v. Collins*, 950 A.2d 1041, 1047 n.6 (Pa. Super. 2008) (*en banc*) (citation omitted).

A request to talk does "not need to be justified by any level of suspicion." *In re D.M.*, 781 A.2d 1161, 1165 (Pa. 2001). A request is distinguishable from a demand. *Commonwealth v. Au*, 42 A.3d 1002, 1007 n.3 (Pa. 2012). A seizure does not occur when police request identification from an individual or ask questions of that individual. *Id.* at 1007 (quoting, *inter alia*, *I.N.S. v. Delgado*, 466 U.S. 210, 216 (1984) ("[P]olice questioning, by itself, is unlikely to result in a Fourth Amendment violation.")). Similarly, a police demand to keep one's hands out of one's pockets is a "minor inconvenience" and "not a substantial impairment on [a defendant's] liberty of movement, particularly considering the officers['] legitimate concerns for their own safety." *Commonwealth v. Lyles*, 54 A.3d 76, 83 (Pa. Super. 2012).

In sum, the question of "whether the police needed some level of requisite cause **at the time** they **initially** approached" the defendant is "governed by the type of encounter that the **police initiated** when they approached" the defendant. *In re D.M.*, 781 A.2d at 1164 (emphases added). The critical inquiry is what type of encounter the police initiated at the time they initially approached the defendant. *See id.* After identifying the type of encounter—*e.g.*, mere encounter, investigative detention, or custodial detention—this Court must then determine whether the police had the requisite cause for that encounter, respectively, *e.g.*, no suspicion required, reasonable suspicion that criminal activity was afoot, or probable

cause for an arrest. *See Ellis*, 662 A.2d at 1047; *Jones*, 378 A.2d at 839 n.4.

Instantly, Appellant's argument did not address the flash information relied on by the police and their belief that Appellant matched the flash. *See* Trial Ct. Op. at 2. Under the totality of the circumstances, we assume a seizure occurred when the police, late at night and in a high crime area, initially asked Appellant to "come here," thus issuing an official compulsion to stop. *See Mendenhall*, 715 A.2d at 1119; *Ellis*, 662 A.2d at 1047. The police reinforced the directive to approach the vehicle when one of the officers exited the vehicle and asked Appellant to remove his hands from his pockets and "come here." *See Ellis*, 662 A.2d at 1047. In other words, the circumstances were such that a reasonable, innocent person, in Appellant's shoes, would have thought he was being restrained. *See Matos*, 672 A.2d at 773-74.

Consequently, we ascertain whether the police had the requisite reasonable suspicion that criminal activity was afoot after initiating the investigative detention. *See id.*; *Jones*, 378 A.2d at 839 n.4. In establishing whether there was reasonable suspicion, it is axiomatic that the United States and Pennsylvania constitutions "do not proscribe all searches and seizures . . . only 'unreasonable' ones." *Commonwealth v. Beaman*, 880 A.2d 578, 582 (Pa. 2005) (footnote omitted).

> The reasonableness of a seizure that is less intrusive than a traditional arrest depends upon a three-pronged

balancing test derived from ***Brown v. Texas***, 443 U.S. 47, 99 S. Ct. 2637, 61 L. Ed. 2d 357 (1979), in which the reviewing Court weighs the gravity of the public concerns served by the seizure, the degree to which the seizure advances the public interest, and the severity of the interference with individual liberty. To be deemed reasonable under this standard, such a seizure must ordinarily be supported by reasonable suspicion, based upon objective facts, that the **individual** is involved in criminal activity. The existence of individual suspicion, however, is not an "irreducible" component of reasonableness in every circumstance.

***Id.*** at 582 (emphasis added and citations and some punctuation omitted); ***accord Commonwealth v. Mistler***, 912 A.2d 1265, 1271 (Pa. 2006) (stating that "the Fourth Amendment generally requires the presence of individualized suspicion to justify a seizure"). "A primary concern when balancing opposing interests is protecting the individual from arbitrary invasions resulting from the broad discretion of the officers." ***Mistler***, 912 A.2d at 1271. Instantly, because of the flash and the police belief that Appellant matched the flash,[4] we hold that under the totality of circumstances, the police reasonably believed Appellant was involved in criminal activity. ***See Beaman***, 880 A.2d at 582 (holding reasonable suspicion based on objective facts). Accordingly, we discern no error by the

---

[4] We acknowledge that the flash description was for a gunpoint robbery committed by a black male wearing a white hoodie and a black male wearing a blue hoodie; Appellant is a black male who was wearing a black hoodie that appeared to be dark or blue at the time the police encountered him. N.T., 1/23/14, at 7-8, 14-15, 24, 26.

trial court and affirm, albeit on different grounds. **See *In re J.E.***, 937 A.2d at 425; ***Clouser***, 998 A.2d at 661 n.3.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/24/2015

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
CRIMINAL TRIAL DIVISION


COMMONWEALTH OF PENNSYLVANIA    : COURT OF COMMON PLEAS
       : PHILADELPHIA COUNTY
       :
vs.        : NO.: MC-51-CR-0036469-2013
       :
PATRICK HARRISON        : FILED

NOV 04 2014

Post Trial Unit

OPINION

PROCEDURAL HISTORY

Defendant, Patrick Harrison, was charged as of the above bill and term number with knowing and intentional possession of a controlled substance and resisting arrest following his arrest on September 18, 2013. On January 23, 2014, defendant appeared before the Honorable Frank T. Brady of the Municipal of Philadelphia County for trial. Prior to the commencement of trial defendant litigated a motion to suppress, which Judge Brady denied. Defendant then proceeded to trial and at the conclusion of the trial Judge Brady found defendant guilty of the drug offense but not guilty of the resisting arrest charge. Judge Brady then imposed a sentence of twelve months' probation upon defendant.

Following the imposition of sentence, defendant filed a petition for writ of *certiorari.* The petition was heard by this Court and denied. Defendant thereafter filed a notice of appeal and a requested Pa.R.A.P. 1925(b) statement.



MC-51-CR-0036469-2013 Comm. v. Harrison, Patrick M.
Opinion

7218716041

1

FACTUAL HISTORY

On September 18, 2013, at approximately 10:30 p.m., Philadelphia Police Officer Brian McCarthy and his partner, Officer Gallagher, was on routine patrol when they received a radio call indicating that a gunpoint robbery had just occurred in the area of 42nd and Walnut Streets and that the complainant had described his assailants as two black men garbed in blue and white hooded sweatshirts respectively, who had fled in a westerly direction. (N.T. 6-7, 26).[1] Approximately two minutes thereafter, the officers observed defendant in the vicinity of 44th and Walnut Streets walking northbound on 44th Street. Id. Because he was wearing what the officers believed to be a blue sweatshirt and he matched the flash information, the officers told defendant to approach them. (N.T. 7).[2] Defendant looked at the officers, stuck his hands in his pocket and kept walking. Id.

As defendant was walking away, Officer McCarthy exited his vehicle, told defendant to remove his hands from his pocket and to come to him. Id. Defendant complied with both requests but as he approached the officers, he placed his hands back inside his pockets. (N.T. 7). Officer McCarthy removed defendant's hands from defendant's pockets at which time defendant fled northbound on 44th Street. (N.T. 8). Officer McCarthy pursued him and managed to subdue defendant, who was struggling, by getting him down onto the ground and handcuffing him with the help of other officers. Id.

---

[1] All references to the record refer to the testimony recorded on January 23, 2014, during the motion to suppress and trial.
[2] Officer McCarthy indicated that on closer inspection the sweatshirt was black but appeared to be blue because it was dark. (N.T. 14).

2

Before he was apprehended and he as he was fleeing defendant discarded a glass jar from his right hand pocket. Id. Police retrieved the glass object after securing defendant. It was found to contain more than six grams of PCP. (N.T. 48).

DISCUSSION

In his 1925(b) statement, defendant asserts that this Court erred by denying his writ of *certiorari*. According to defendant the writ should have been granted because Judge Brady erred by denying his motion to suppress because police lacked sufficient grounds to effectuate an investigative detention of him given that he was merely walking down the street and did not match the description of either robbery suspect. Defendant further contends that because the police did not have grounds to stop him the PCP should have been suppressed insofar as it was discarded as a result of illegal police conduct.

A lower court's decision on the issuance of a writ of *certiorari* will not be disturbed absent an abuse of discretion. Commonwealth v. McGinley, 563 A.2d 518 (Pa. Super. 1989). The standard of review for a challenge to the denial of a motion to suppress is that, assuming there is support in the record, the reviewing court is bound by the facts as found by the suppression court and may reverse the court only if the legal conclusions drawn from those facts are in error. Commonwealth v. Jackson, 698 A.2d 571, 572 (Pa. 1997). "[The]scope of review is limited to the factual findings and legal conclusions of the [trial] court." In re L.J., 79 A.3d 1073, 1080 (Pa. 2013) (citation omitted). The reviewing court is "limited to considering only the evidence of the prevailing party, and so much of the evidence of the non-prevailing party as remains uncontradicted when read in the context of the record as a whole." Id.

3

Our Pennsylvania courts require law enforcement officers to demonstrate ascending levels of suspicion to justify their interactions with citizens as those interactions become more intrusive. The first of these is a "mere encounter," or request for information, which need not be supported by any level of suspicion, but carries no official compulsion to stop or to respond. Commonwealth v. Pakacki, 901 A.2d 983, 987 (Pa. 2006). The second, an "investigative detention," must be supported by a reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. Id. An officer may conduct a brief investigative stop of an individual where the totality of the circumstances leads the officer to possess reasonable suspicion that criminal activity is afoot. Commonwealth v. Melendez, 676 A.2d 226, 228 (Pa. 1996).

Finally, an arrest or "custodial detention" must be supported by probable cause. See Commonwealth v. Rodriguez, 614 A.2d 1378, 1382 (Pa. 1992). The key difference between an investigative detention and a custodial one is that the latter involves such coercive conditions as to constitute the functional equivalent of an arrest. Pakacki, 901 A.2d at 987. In determining whether an encounter with the police is custodial, the standard is an objective one, and must be determined with reference to the totality of the circumstances. Commonwealth v. Edmiston, 634 A.2d 1078, 1085-86 (Pa. 1993).

Whenever a police officer stops a person and restricts his or her freedom to leave, the officer has "seized" the individual and the protections of the Fourth Amendment apply. Terry v. Ohio, 392 U.S. 1, 16 (1968). "[A]n encounter becomes a seizure if the officer engages in conduct which a reasonable man would view as threatening or offensive even if performed by another private citizen. This would include such tactics

4

such as . . . blocking the path of the suspect, and encircling the suspect by many officers. . . ." Bennett, 604 A.2d at 283. To determine whether an interaction rose to the level of a seizure, courts must examine the totality of the circumstances. Commonwealth v. Strickler, 757 A.2d 884, 890 (Pa. 2000) (quoting 3 WAYNE LEFAVE, SEARCH AND SEIZURE § 9.2(H) (2D ED. 1987).

Instantly, the suppression court found that the interaction originated as a mere encounter and only later rose to the level of an investigative detention after defendant put his hands back inside his pockets after being told to remove them from his pockets and he fled after Officer McCarthy removed defendant's hands from them. (N.T. 39). This Court found nothing amiss with this conclusion because the officers did nothing suggesting that defendant could not continue on his way during their initial interaction with defendant. The police did not grab defendant, brandish weapons, block his way, or use language a reasonable person would have concluded could not be ignored.

Police officers are "entitled to approach ordinary citizens on the street and ask a few questions." Commonwealth v. Guzman, 44 A.3d 688, 694 (Pa. Super. 2012). It was only after defendant refused to remove his hands from his pockets did the encounter rise to the level of an investigatory stop.[3] In Commonwealth v. Martin, 705 A.2d 887 (Pa. Super. 1997), police received an anonymous tip at 3:30 p.m. that Martin was selling narcotics at the Capital Café. Martin, 705 A.2d at 890. The tip was relayed to Detective

---

[3] It is noted that simply asking someone to remove his hands from his pocket does not escalate a mere encounter into an investigative detention. See Commonwealth v. Lyles, 54 A.3d 76 (Pa. Super. 2012), affirmed, 97 A.3d 298 (Pa. 2014) (noting that the minor act of asking someone to remove his hands from his pocket is "not a substantial impairment on ... liberty of movement, particularly considering the officers legitimate concerns for their own safety.").

Raymond Greene who knew Martin. Id. Detective Greene proceeded to the Café where he approached Martin, asked him if he could speak with him, and then asked him "to step outside." Id. Martin responded, "Okay," and exited the Café. Id.

On appeal, the Superior Court held that in asking Martin to talk and step outside did not initiate an investigative detention because Detective Greene did not approach Martin in a threatening manner, did not coerce or intimidate him, and never told Martin that he was required to leave the Café. Id.

Similarly, In the Interest of D.M., 781 A.2d 1161 (Pa. 2001), the Pennsylvania Supreme Court held that no seizure had occurred in a case in which an officer received a call that a man was seen with a gun at a certain intersection in Philadelphia. Id., 781 A.2d at 1162. Police responded immediately and saw D.M., who matched the description of the armed man provided by the caller. Id. The officer "exited his vehicle and told [D.M.] to come over." Id. The Supreme Court found that the officer acted legally his iteratction with "did not need to be justified by any level of suspicion" because, "at the time the police initially approached D.M. it was unclear whether the police intended to do anything other than talk to him." Id.

Instantly, as in the foregoing cases, police did nothing more than manifest an intention to speak to defendant. As noted above, there is no evidence that the police acted in a threatening, coercive, or intimidating manner, or that when they first encountered defendant they told him that he was required to stop. Instead, the record shows that defendant voluntarily stopped and began speaking with the police. It was only after defendant placed his hands inside his pocket that the incident escalated into an

6

investigative detention. Thus, the lower court did not err by finding that defendant's rights were not violated when police initially interacted with defendant.

Next, the fact that the police ordered defendant to take his hands out of his pockets did not convert the encounter into a seizure. The Superior Court has ruled that "if during a mere encounter, an individual on his own accord, puts his hands in his pocket, thereby creating a potential danger to the safety of a police officer, the officer may justifiably reach for his side arm and order the individual to stop and take his hand out of his pocket. Such reaction by a police officer does not elevate the mere encounter into an investigative detention because the officer's reaction was necessitated by the individual's conduct." Commonwealth v. Carter, 779 A.2d 591, 594 (Pa. Super. 2001); see also Commonwealth v. Hall, 713 A.2d 650, 653 (Pa. Super. 1988) (the defendant was not seized when an officer asked him rev'd on other grounds, 771 A.2d 1232 (Pa. 2001).

Thus, by having his hands in his pocket and then placing them back inside them after being directed to remove them, defendant gave police grounds to stop and investigate him. In Hall, supra, the facts were as follows:

> Two Reading police officers, patrolling in their cruiser, saw defendant and a companion conversing in an alley near a café. The police parked their vehicle, the conversants broke up, and appellant approached the police car while getting his I.D. out of his wallet and asked "Is everything all right, officer?" After a brief exchange, the officer removed from his vehicle and noticed Hall had his hands in his pocket. He asked if he was armed and Hall said he was not. Hall was asked to take his hands out of his pocket, but only removed his left hand. As the officer came to him, Hall pivoted with his hand in his pocket. After being asked again to remove his hand, he did, but became confrontational and stated that he would not be searched. The officer replied that he would not search him, but only pat him down for weapons.

Hall, 713 A.2d at 652-653.

7

The <u>Hall</u> Court ruled that "when Hall approached with his hand thrust in his pocket and refused to remove it, the encounter escalated into a situation where the totality of circumstances involved a reasonable suspicion and justified a detention to stop and frisk." <u>Hall</u>, 713 at 653. Thus, the Hall's decision to keep his hand in his pocket after being asked to remove it escalated the encounter into one of reasonable suspicion.

Here, as in Hall, defendant's decision to again place his hands raised the matter from a mere encounter to an investigative detention. The finding by the lower court that this was so was not erroneous.

In addition, even if the initial interaction between the police and defendant herein did rise to the level of an investigative detention, a reversal is not required because police had the right to stop defendant based on the totality of circumstances existing at the time. While on routine patrol, the officers herein received a flash report of a gunpoint robbery. The flash report provided a physical and clothing description of the assailants as well as the direction in which they fled. Not more than two minutes later, two block west of the scene of the robbery, the police observed defendant, who matched the physical description of one of the assailants, was dressed in garb closely matching the description of the clothes worn by one of the suspects and had his hands in his pockets.

Case law is clear that facts such as the instant ones justified the stop. As a general matter, police are permitted to conduct an investigatory stop "when relying on information transmitted by a valid police bulletin." <u>In re D.M.</u>, 727 A.2d 556, 558(Pa. 1999) (citations omitted); <u>See also</u> <u>Commonwealth v. Foglia</u>, 979 A.2d 357 (Pa. Super. 2009) (police had reasonable suspicion to conduct investigatory detention upon arriving at location, a high crime area, within 90 seconds of the radio call and found the defendant

8

matching the description of the radio call, and the defendant walked away from the approaching police cruiser and grabbed at his waist band); Commonwealth v. Jackson, 519 A.2d 427, 430 (Pa. Super. 1986) (police officer may rely on police radio flash information to justify investigatory stop).

That same factor present here as well as others, all of which justified the stop of defendant, including the recent radio call, the fact that the robbery was committed by gunpoint, and defendant's similarity to the description broadcast over police radio.

Defendant asserts that the stop was illegal because he did not match the flash description because his sweat shirt was black in color and not blue. This small discrepancy was explained by the officer. Moreover, the law is clear that minor differences in clothing do not render a stop illegal. See, e.g., Commonwealth v. Vinson, 522 A.2d 1155, 1157 (Pa. Super. 1987) (stop proper although the appellant and his companion were shorter than the victim's description, and their jackets were different); Commonwealth v. Sheridan, 437 A.2d 44 (Pa. Super. 1981) (stop was proper even though the defendant wore a different color and type of coat from the description, and he lacked the described hat).

It is important to note that a reviewing court "cannot evaluate the totality of the circumstances through the grudging eyes of hindsight nor in terms of library analysis, but as understood by those versed in the field of law enforcement." Commonwealth v. Jackson, 907 A.2d 540, 543 (Pa. Super. 2006) (quoting Commonwealth v. Shelly, 703 A.2d 499, 503 (Pa. Super. 1997)).

9

Finally, regarding defendant's claim that the illegal actions of the police forced him to abandon the PCP, and therefore the lower court erred by denying his suppression motion, it is noted that

> [T]he principle of "forced abandonment" is not recognized under the Fourth Amendment, California v. Hodari D., 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690, (1991), although it is under Article 1, Section 8. Commonwealth v. Matos, 43 Pa. 449, 672 A.2d 769 (1996). While Pennsylvania recognizes the principle of forced abandonment, that legal theory requires that the abandonment of contraband or evidence be precipitated by illegal police conduct. In the Interest of Evans, 717 A.2d 542 (Pa.Super. 1998).

Commonwealth v. Jones, 978 A.2d 1000, 1005 n. 6. (Pa. Super. 2009).

Because the police acted legally in all respects in their interaction with defendant, there was no forced abandonment and the lower court did not err by denying defendant's motion to suppress on that ground.

Accordingly, for all of the foregoing reasons, it is suggested that the ruling made by this Court denying defendant's petition for writ of certiorari be sustained.

CONCLUSION

Based on the foregoing, the judgment of sentence should be affirmed.

By the Court,

DATE: 11/14/14

_____
Honorable Jeffrey P. Minehart

10