J-S46002-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| MARSEILLE WILSON | |
| Appellant | No. 3593 EDA 2013 |

Appeal from the Judgment of Sentence July 11, 2013
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0013135-2011

BEFORE:  MUNDY, J., OLSON, J., and MUSMANNO, J.

MEMORANDUM BY MUNDY, J.:                **FILED SEPTEMBER 15, 2015**

Appellant, Marseille Wilson, appeals from the July 11, 2013 aggregate judgment of sentence of five to ten years' imprisonment, plus ten years' probation, imposed after he was found guilty of two counts of indecent assault and one count each of rape and sexual assault.[1]  After careful review, we affirm.

The trial court summarized the relevant factual and procedural history of this case as follows.

> [The victim,] McNeil[,] testified she was 23 years old and had lived in West Philadelphia her entire life. She testified that in October 2011 she was living on 63rd Street with her sister Talia McNeil ("Talia") and her friend Shaneia Jenkins ("Shaneia").  She stated that on the night of October 14, 2011, she and

_____

[1] 18 Pa.C.S.A. §§ 3126(a), 3121(a)(3), and 3124.1, respectively.

Shaneia went to a neighborhood bar, Connections, which was three blocks from her apartment. She testified that at the bar she had a few drinks and eventually Shaneia left. She testified that she drank two glasses of wine, some vodka, and some Hennessey. She stated that after Shaneia left, she spent time with Thomas, Temple, Razul and [Appellant]. She stated that she knew Thomas, Temple and Razul from elementary and/or high school, but that she had never met [Appellant] before.

McNeil testified that she eventually got a ride from Razul to her apartment and in the car were Thomas, Temple and [Appellant]. She testified that they were all coming back to her place to spend time with Talia's boyfriend who was at their apartment. She testified that on the way to the apartment the car stopped at a gas station. She stated that in the three to four hours she was at the bar she had about four drinks and in the car she started to feel sick. She testified that she did not vomit in the car and she did not talk to the others who were in the car. She stated that when they got to her house she went straight to the bathroom to vomit. She testified that after throwing up she went in the bathtub to cool off in the water.

She testified that while she was in the bathtub she took off her shirt and was wearing a bra, and her tights. She testified that eventually Talia and Thomas helped her out of the tub and brought her into the bedroom. She stated that after getting into bed she started vomiting again and Talia brought her a black bucket to vomit in. She testified that after vomiting, Talia closed the door and turned the lights off and she went to sleep. She testified that the next thing she remembered was waking up to [Appellant] in her bed with his penis inside her vagina. She testified that she said "get off me, stop[,] and help me." She stated that Talia came into her room and said to [Appellant], "What are you doing to my sister." To which [Appellant] responded, "My name is Cell. Your sister knows me," before he ran out of

the room. McNeil testified that she did not know [Appellant] and that she saw him earlier in the night, but did not have any conversations with him.

McNeil testified that [Appellant]'s body was positioned behind hers and she was on her side when she woke up. She stated that [Appellant]'s hands were on her side and her panties were down towards her knees. She stated that she had her panties on when she went to sleep. She testified that when she told [Appellant] to stop, he kept having sex with her. After [Appellant] ran out, she testified that Shaneia and Thomas came in the room and they tried to call her a cab to the hospital because she felt pain from her tampon that was inside of her still. She testified that she was on her period that night and intentionally left the tampon inside her when she went to sleep. McNeil testified that she went to the hospital in an ambulance with Talia and her father. After the hospital, McNeil testified that she went to the Special Victims Unit where a nurse performed an examination and she gave a statement to Detective Jenkins.

McNeil testified that after the incident on October 15, 2011, she did not see [Appellant] again until November 4, 2011. She testified that she saw [Appellant] at Connections and that it was the first time she returned to the bar since the assault. She testified that she called the police and [Appellant] was arrested in the bar that night. Following the night in October 2011, McNeil testified that she had been back to Connections only three times. She testified that one of those times she saw Temple and Thomas. She testified that Temple said, "I ain't f[**]king with you. My man was drunk. You should just let him go." She testified that she started crying and then approached them and Temple repeated himself. McNeil testified that she had only been back to Connections once since then because she felt uncomfortable being there and that something might happen to her. She testified that the others who were with [Appellant] had been at her apartment before October 14, 2011, but that [Appellant] had

- 3 -

never been there before and she did not think anything would happen that night since he was with her other friends.

McNeil identified different photographs showing her bedroom and her apartment. She testified that she had four drinks on the night of the … incident and that she was intoxicated, but that there were no moments which she did not remember. She testified that she did not invite [Appellant] to come back to her house, into her bedroom nor did she tell him that he could have sex with her.

Trial Court Opinion, 5/30/14, at 5-7.

On December 8, 2011, the Commonwealth filed an information, charging Appellant with the above-mentioned offense, plus one additional count of rape and one count of simple assault.[2] Appellant proceeded to a jury trial on February 26, 2013, at the conclusion of which, Appellant was found guilty of two counts of indecent assault and one count each of rape and sexual assault. The simple assault charge and the second rape count were *nolle prossed*. On July 11, 2013, the trial court imposed a sentence of five to ten years' imprisonment, plus ten years' probation, for rape but no further penalty on the remaining charges. On July 19, 2013, Appellant filed a timely post-sentence motion. The trial court entered an order on November 19, 2013 denying Appellant's post-sentence motion by operation

---

[2] 18 Pa.C.S.A. §§ 3121(a)(1) and 2701(a), respectively.

- 4 -

of law. ***See generally*** Pa.R.Crim.P. 720(B)(3)(c). On November 20, 2013, Appellant filed a timely notice of appeal.[3]

On appeal, Appellant raises one issue for our review.

> Did not the trial court err when it admitted an out-of-court statement in evidence for its effect on the listener where the listener's reaction to the statement was irrelevant to the case and the trial court's refusal to give a limiting instruction restricting the jury from considering the evidence for its truth unfairly prejudiced … [A]ppellant?

Appellant's Brief at 4.

Although presented as a single issue, Appellant's argument on appeal contains two sub-issues. First, Appellant avers the trial court abused its discretion in allowing McNeil to testify to a statement made by Temple, "I ain't f[**]king with you. My man was drunk. You should just let him go." N.T., 2/27/13, at 39. Specifically, Appellant argues that statement was irrelevant under Pennsylvania Rule of Evidence 401 and its probative value was outweighed by its prejudicial effect under Rule 403. Appellant's Brief at 13, 22. In his second sub-issue, Appellant argues the trial court erred in not instructing the jury that it may not consider said statement for its truth. ***Id.*** at 19.

We begin by noting our well-settled standard of review regarding these issues.

---

[3] Appellant and the trial court have complied with Pennsylvania Rule of Appellate Procedure 1925.

> The admissibility of evidence is at the discretion of the trial court and only a showing of an abuse of that discretion, and resulting prejudice, constitutes reversible error. An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record. Furthermore, if in reaching a conclusion the trial court over-rides or misapplies the law, discretion is then abused and it is the duty of the appellate court to correct the error.

**Commonwealth v. Fischere**, 70 A.3d 1270, 1275 (Pa. Super. 2013) (*en banc*) (internal quotation marks and citations omitted), *appeal denied*, 83 A.3d 167 (Pa. 2013). Likewise, "[i]n deciding whether a trial court erred in refusing to give a jury instruction, we must determine whether the court abused its discretion or committed an error of law." **Commonwealth v. Clouser**, 998 A.2d 656, 658 (Pa. Super. 2010) (citation omitted), *appeal denied*, 26 A.3d 1100 (Pa. 2011).

Assuming, *arguendo*, that the trial court erred by allowing Temple's statement and in not giving the requested limiting instruction to the jury, we nevertheless conclude that its errors were harmless.

> [A]n error will be deemed harmless where the appellate court is convinced beyond a reasonable doubt that the error could not have contributed to the verdict. Guidelines for determining whether an error is harmless include: (1) whether the error was prejudicial to the defendant or if prejudicial, whether the prejudice was *de minimis;* (2) whether the erroneously admitted evidence was merely cumulative of other, untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) whether the evidence of guilt was so

overwhelming as established by properly admitted and uncontradicted evidence that the prejudicial effect of the error was so insignificant by comparison to the verdict.

***Commonwealth v. Molina***, 33 A.3d 51, 67 (Pa. Super. 2011) (*en banc*) (citation omitted), *affirmed*, 104 A.3d 430 (Pa. 2014).

As part of his defense, Appellant called Miguel Thomas who testified that Temple told McNeil the following.

> Like, I don't want to speak to you because you got one of my friends locked up and you know that's not what happened. You know that's not how it went down. Like, he didn't rape you. He didn't hold you down and rape you or anything like that. It was just like we were drunk and we tried -- he tried to do it to you. Now, that's how you should put it. Don't try to put it like he raped you because that's not how it went down.

N.T., 2/28/13, at 26-27. Here, because Temple's statements came in as part of Appellant's own defense, they were introduced to establish the substance of Temple's statements, not for the limited purpose of their effect on the listener such as during the Commonwealth's case-in-chief. ***Cf.*** N.T., 2/26/13, at 5-9. Since Appellant's own defense witness testified to the same statements as those Appellant complains of on appeal, but in greater detail, which were admitted for their substance, any potential prejudice was

*de minimis*, rendering any potential errors by the trial court harmless.[4] **See Molina**, **supra**.

Based on the foregoing, we conclude Appellant's issue is devoid of merit. Accordingly, the trial court's July 11, 2013 judgment of sentence is affirmed.

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/15/2015

_____

[4] Appellant acknowledges his eliciting of Temple's statements from his own witness, but blames the trial court for not giving the limiting instruction. Appellant's Brief at 25. Appellant argues that he was "trying to make the best of a bad situation." **Id.** However, in our view, it appears odd that Appellant would wish for the jury to hear testimony, that according to Appellant undermines his own credibility, for a second time. Further, we agree with the Commonwealth that Appellant's intentional elicitation of Temple statements reflects a belief that the statement could have been beneficial to him, such as to undermine Temple or the victim's credibility by suggesting to the jury that they were all intoxicated and could not remember the events correctly. **See generally** Commonwealth's Brief at 9 n.3.