J-S47026-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KHAFRE RAHEEM JOHNSON | : | |
| | : | |
| Appellant | : | No. 621 MDA 2020 |

Appeal from the PCRA Order Entered March 20, 2020
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0000147-2017

BEFORE: STABILE, J., NICHOLS, J., and STRASSBURGER, J.[*]

MEMORANDUM BY NICHOLS, J.: **FILED MARCH 17, 2021**

Appellant Khafre Raheem Johnson appeals from the order denying his first Post Conviction Relief Act[1] (PCRA) petition. Appellant raises three claims of ineffective assistance of counsel. We affirm.

We state the facts as set forth by this Court in resolving Appellant's direct appeal:

> Three witnesses testified in this [bench trial]. First, the victim Kory Filson testified.[fn3] He testified that at 10:30 p.m. on December 2, 2015, he was walking to a gas station in the area of Jackson Street, Sunshine Alley, and Mount Rose Avenue. He described the area as well lit by street lights and a garage light. While Filson was walking, Appellant and one other man approached him from behind.

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 42 Pa.C.S. §§ 9541-9546.

[fn3] Mr. Filson did have a previous unsworn falsification conviction in 2013.

Filson knew Appellant before that night because he had attended middle school with Appellant's older brother and because Appellant was one or two classes behind Filson.[2] In fact, Filson had almost instantly recognized Appellant when he and the other man approached him.

The other man grabbed Filson from behind, and Appellant stood in front of Filson. Appellant pulled out a handgun and told Filson to empty Filson's pockets.

During this incident, Appellant pointed the gun at Filson's midsection. Then, Appellant and the other man went through Filson's pockets and took all of the pockets' contents. For example, they took his wallet, cell phone, pocket knife, $100 in cash, credit cards, and a prescription. During the altercation, Filson had feared for his life.

In fact, during the altercation, Filson said Appellant's name and asked Appellant if he was serious, to which Appellant responded, "he was dead serious." Afterwards, the two men ran down an alleyway, and Filson went several blocks to his home, where he called the police with a second cell phone that he had at home.

Officer Richard Morris ("Officer Morris") testified next. . . . At about 10:45 p.m., Officer Morris was dispatched for a robbery, and he met with Filson at South Albermarle Street.

That night, Filson walked Officer Morris through what had happened. For example, he took Officer Morris to the 700 block of Sunshine Alley, just North of Jackson Street, which is where Filson told the officer that the robbery occurred. Officer Morris described the lighting in that vicinity as "very good for an alley. It's a residential area, it's densely residential, a lot of ambient lighting from the homes. I would say in an alley with the light

_____

2 Specifically, Filson testified that "I went to middle school with [Appellant's] older brother, Antonio, and [Appellant] was a class or two behind me in high school." N.T. Trial, 5/17/17, at 9. Filson also identified Appellant at trial. *Id.* at 8.

being what it was, looking at your face from here and there, I'd have no problem identifying you." During his testimony, Officer Morris noted that he had met Filson before. Further, he explained that while Filson was normally an energetic and talkative person, his personality that night was "very somber, downtrodden, and he appeared scared to the officer, beaten down, if you will."

Lastly, Appellant testified. Appellant stated that he did not know Filson, and that while he was in the middle school Filson referred to, he did not attend the high school that Filson described. Appellant stated he did not know where he was that night specifically, but he was not in the area that the robbery occurred. He pointed out that he lived on the other side of town and did not have any reason to be in Spring Garden Township or that part of town.[fn24]

> [fn24] During his testimony, Appellant acknowledged that he was adjudicated in 2013 for retail theft and pled guilty to theft by unlawful taking. He also acknowledged that in 2012 he pled guilty to receiving stolen property. These convictions were pointed out for *crimen falsi* purposes only during the trial.

Police arrested Appellant on September 2, 2016. The Commonwealth charged him with two counts of robbery, 18 Pa.C.S. § 3701(a)(1)(ii) and (iv) (counts 1 & 3); one count of conspiracy to commit robbery, 18 Pa.C.S. § 903 (count 2); one count of theft by unlawful taking, 18 Pa.C.S. § 3921(a) (count 4); one count of receiving stolen property, 18 Pa.C.S. § 3925(a) (count 5); and one count of possession of firearm prohibited, 18 Pa.C.S. § 6105(a)(1) (count 6). Appellant proceeded to a non-jury trial on May 17, 2017. That same day, the trial court found him guilty on all counts except for the firearm offense. On June 26, 2017, the trial court sentenced Appellant to 6-12 years' incarceration at count 1, and a concurrent term of 5-10 years' incarceration at count 2. The court merged the remaining counts for sentencing purposes.

On July 5, 2017, Appellant filed a timely post-sentence motion, in which he sought a motion for judgment of acquittal on sufficiency grounds, and a motion for a new trial on weight-of-the-evidence

grounds.[3]    The trial court denied Appellant's post-sentence motion on July 11, 2017.  Appellant filed a timely notice of appeal on July 18, 2017.

***Commonwealth v. Johnson, K.***, 180 A.3d 474, 476-77 (Pa. Super. 2018) (citations omitted and formatting altered), *appeal denied*, 205 A.3d 315 (Pa. 2019).

In his direct appeal, Appellant asserted "there was insufficient evidence supporting his identity as the perpetrator of the robbery committed against the victim."  ***Id.*** at 478.  This Court affirmed, and our Supreme Court denied Appellant's petition for allowance of appeal on March 27, 2019.

On May 2, 2019, Appellant filed a *pro se* PCRA petition, and the PCRA court appointed PCRA counsel, who filed an amended PCRA petition on January 8, 2020.

The PCRA court held an evidentiary hearing on January 29, 2020, at which Appellant's trial and direct appeal counsel John Hamme, Esq., Mandy Keiser (Appellant's alibi witness), and Appellant testified.  In relevant part, Attorney Hamme seemingly testified on direct examination that he did **not** challenge the weight of the evidence.  ***See*** N.T. PCRA Hr'g, 1/29/20, at 15.[4]

---

[3] The certified record includes Appellant's motion for a new trial based on weight of the evidence.  Appellant's Post-Trial Mot., 7/5/17, at ¶ 14 (stating, a "new trial should be granted in the interest of justice because a review of the weight of the evidence provides that the fact finder's verdict was not based upon the facts presented, but was a product of speculation and conjecture such that when the evidence is weighed, the verdict is against it.").

[4] We summarize additional testimony from the PCRA hearing below.

The PCRA court denied Appellant's PCRA petition on March 17, 2020. Order, 3/17/20. Appellant timely appealed and timely filed a court-ordered Pa.R.A.P. 1925(b) statement.

On appeal, Appellant raises the following three issues:

1. Whether the [PCRA] court erred by denying Appellant's PCRA petition as [Attorney Hamme] was ineffective for failing to file the requested post sentence motion that the verdict was against the weight of the evidence thus preventing a valid appellate issue from being raised on direct appeal.

2. Whether the [PCRA] court erred by denying Appellant's PCRA petition as [Attorney Hamme] failed to investigate, develop[,] and present any evidence regarding the misidentification of Appellant. Counsel failed to investigate and present evidence that the victim was not familiar with Appellant as they did not go to school together nor did they spend any time together.

3. Whether the [PCRA] court erred by denying Appellant's PCRA petition as previously unavailability exculpatory evidence has become available and would have changed the outcome of the trial. The alibi testimony of Mandy K[e]iser was not merely cumulative and likely would have compelled a different verdict.

Appellant's Brief at 4.

Appellant first contends that Attorney Hamme was ineffective concerning a weight of the evidence claim. Appellant's brief is unclear as to whether he is challenging Attorney Hamme's failure to preserve the claim in a post-sentence motion or in Appellant's direct appeal. *Id.* at 12-14. Instead, Appellant focuses on whether Attorney Hamme had a reasonable basis for foregoing his weight of the evidence claim, and concludes that Attorney Hamme failed to assert a meritorious claim and that he is entitled to a new trial. *Id.* at 13-15. Appellant further contends that there was a reasonable

probability that had Attorney Hamme properly preserved or raised a weight of

the evidence claim, "the results of Appellant's direct appeal would have been

different." *Id.* at 16.

Our standard of review follows:

> [O]ur standard of review from the denial of a PCRA petition is
> limited to examining whether the PCRA court's determination is
> supported by the evidence of record and whether it is free of legal
> error.   The PCRA court's credibility determinations, when
> supported by the record, are binding on this Court; however, we
> apply a *de novo* standard of review to the PCRA court's legal
> conclusions.
>
> Furthermore, to establish a claim of ineffective assistance of
> counsel, a defendant must show, by a preponderance of the
> evidence, ineffective assistance of counsel which, in the
> circumstances of the particular case, so undermined the truth-
> determining process that no reliable adjudication of guilt or
> innocence could have taken place.  The burden is on the defendant
> to prove all three of the following prongs: (1) the underlying claim
> is of arguable merit; (2) that counsel had no reasonable strategic
> basis for his or her action or inaction; and (3) but for the errors
> and omissions of counsel, there is a reasonable probability that
> the outcome of the proceedings would have been different.
>
> We have explained that a claim has arguable merit where the
> factual averments, if accurate, could establish cause for relief.
> Whether the facts rise to the level of arguable merit is a legal
> determination.
>
> The test for deciding whether counsel had a reasonable basis for
> his action or inaction is whether no competent counsel would have
> chosen that action or inaction, or, the alternative, not chosen,
> offered a significantly greater potential chance of success.
> Counsel's decisions will be considered reasonable if they
> effectuated his client's interests.  We do not employ a hindsight
> analysis in comparing trial counsel's actions with other efforts he
> may have taken.
>
> Prejudice is established if there is a reasonable probability that,
> but for counsel's errors, the result of the proceeding would have

been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

Boilerplate allegations and bald assertions of no reasonable basis and/or ensuing prejudice cannot satisfy a petitioner's burden to prove that counsel was ineffective. Moreover, a failure to satisfy any prong of the ineffectiveness test requires rejection of the claim of ineffectiveness.

***Commonwealth v. Sandusky***, 203 A.3d 1033, 1043-44 (Pa. Super. 2019) (citations omitted and formatting altered), *appeal denied*, 216 A.3d 1029 (Pa. 2019). We may affirm on any basis. ***Commonwealth v. Clouser***, 998 A.2d 656, 661 n.3 (Pa. Super. 2010).

Instantly, the record reveals that Appellant's PCRA petition challenged Attorney Hamme's failure to file a post-sentence motion preserving his weight of the evidence claim. ***See*** Appellant's Am. PCRA Pet., 1/8/20, at ¶ 3(b) (alleging Attorney Hamme was ineffective for failing to file the requested post-sentence motion challenging the weight of the evidence thereby preventing the issue from being raised on direct appeal). However, the record establishes that Attorney Hamme did file a post-sentence motion challenging the weight of the evidence.[5] ***See*** Appellant's Post-Trial Mot. at ¶ 14. Therefore, Appellant's challenge is frivolous.

---

[5] We note that Attorney Hamme's PCRA hearing testimony indicated that he did not file a post-sentence motion preserving a weight of the evidence challenge. ***See*** N.T. PCRA Hr'g, 1/29/20, at 15. Nevertheless, the record is clear that he did so. ***See*** Appellant's Post-Trial Mot. at ¶ 14.

To the extent that Appellant argues that Attorney Hamme was ineffective by not challenging the weight of the evidence on direct appeal, he is due no relief. First, Appellant did not preserve an issue regarding Attorney Hamme's appellate representation in his PCRA petition. *See* Appellant's Am. PCRA Pet. at ¶ 3(b). Second, Appellant has not established arguable merit or prejudice, because he has failed to prove that the conclusions of the trial judge acting as fact-finder in Appellant's bench trial, were not supported by the record, speculative, or the product of conjecture including the trial court's consideration of Filson's and Appellant's conflicting and inconsistent testimony. As the fact-finder, the trial court is free to believe all or part or none of the witness testimony including conflicting testimony. ***See Commonwealth v. Smith***, 181 A.3d 1168, 1187 (Pa. Super. 2018) (affirming denial of PCRA relief for defendant's claim that his counsel was ineffective by not challenging the weight of the evidence in his post-sentence motion because "to the extent there was inconsistency between the victim's testimony and the [defendant's] witnesses' testimony," "the trial court was free to weigh the evidence and resolve any inconsistency in the evidence" and "free to determine what impact, if any, the inconsistency had on the victim's credibility" (citations omitted)); ***Commonwealth v. Lyons***, 568 A.2d 1266, 1269 (Pa. Super. 1989) (holding PCRA correctly denied PCRA relief on claim that appellate counsel was ineffective for failing to argue on direct appeal that verdict was against weight of the evidence because claim lacked arguable

merit). Accordingly, we affirm the PCRA court's order denying relief on this issue although on different grounds.[6] *See Sandusky*, 203 A.3d at 1043-44; *Clouser*, 998 A.2d at 661 n.3.

In support of his second issue, Appellant argues that Attorney Hamme was ineffective concerning evidence that the victim did not attend Appellant's high school. Appellant's Brief at 17. Before summarizing Appellant's argument, we discuss additional background relevant to his claim.

In his amended PCRA petition, Appellant asserted that Attorney Hamme should have filed a post-sentence motion raising newly discovered evidence, specifically, a letter demonstrating that he did not attend the same school as Filson. *See* Appellant's Am. PCRA Pet. at ¶ 3(c). At the PCRA hearing, Appellant testified that he did not know the victim. N.T. PCRA Hr'g at 57. Appellant claimed that prior to trial, he requested Attorney Hamme to obtain evidence from the high school in order to establish that he did not attend school with the victim. *Id.* at 58. Appellant testified that after his trial, but before he was sentenced, he contacted the high school, which responded with a letter that Appellant was enrolled at that school but never "physically attended." *Id.* & Ex. 3.

_____

[6] We note, however, that the law permits Attorney Hamme to challenge both sufficiency and weight of the evidence in a post-sentence motion and on direct appeal without conceding the sufficiency of evidence. *See generally Commonwealth v. Widmer*, 744 A.2d 745, 751-52 (Pa. 2000).

On appeal, Appellant argues that, "[t]he lack of investigation or attempt to gather evidence, such as a letter from [the school in question], left counsel with no choice but to have Appellant testify that he did not know the victim." Appellant's Brief at 17. Appellant reasons that because he was required to testify that he did not know the victim, the Commonwealth could introduce evidence of his *crimen falsi*. **Id.** In support, Appellant references the above letter that he did not attend the high school in question. **Id.** at 18-19. Appellant similarly argues, in summary fashion, that Attorney Hamme was ineffective by failing to adequately develop a case of mistaken identification. **Id.** at 19.

> It is well settled that
>
> [c]ounsel has a general duty to undertake reasonable investigations or make reasonable decisions that render particular investigations unnecessary. . . . The duty to investigate, of course, may include a duty to interview certain potential witnesses; and a prejudicial failure to fulfill this duty, unless pursuant to a reasonable strategic decision, may lead to a finding of ineffective assistance.

***Commonwealth v. Johnson, R.***, 966 A.2d 523, 535-36 (Pa. 2009) (citations omitted).

When reviewing Appellant's claim that Attorney Hamme should have presented the letter, we find some guidance in the standard governing the failure to call witnesses, which requires proof that:

> (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew, or should have known, of the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the

testimony of the witness was so prejudicial as to have denied the defendant a fair trial.

*Commonwealth v. Miller*, 231 A.3d 981, 992 (Pa. Super. 2020) (citations omitted), *appeal denied*, 242 A.3d 1288 (Pa. 2020).

For example, in *Commonwealth v. Roney*, 79 A.3d 595 (Pa. 2013), the defendant argued that trial counsel was ineffective by failing to investigate and introduce evidence that another man killed the victim. *Roney*, 79 A.3d at 605. The PCRA court held that the defendant's ineffective assistance claim lacked merit because, among other reasons, the defendant failed to establish prejudice. *Id.* The PCRA court noted that three eyewitnesses identified the defendant as the perpetrator, in addition to other evidence that established the defendant was the killer. *Id.* The *Roney* Court agreed with the PCRA court's reasoning in dismissing this claim. *Id.* at 606.

Instantly, we note that Appellant's amended PCRA petition, which asserted a failure to file a post-sentence motion based on "newly discovered evidence,"[7] did not preserve Appellant's specific claims on appeal. *Compare* Appellant's Am. PCRA Pet. at ¶ 3(c), *with* Appellant's Brief at 19. Moreover, Appellant did not testify at the PCRA hearing that he was left "with no choice" but to testify, and there is nothing in the record that supports this contention,

_____

[7] Although Appellant's amended PCRA petition raised a claim of "newly discovered evidence," it was apparent that the letter could have been obtained before or at trial. *See Miller*, 231 A.3d at 993 n.4.

- 11 -

let alone establishes that he raised it before the PCRA court. Therefore, Appellant's claim is waived by failing to present it to the PCRA court. ***See*** Pa.R.A.P. 302. Additionally, Appellant's boilerplate, bald assertion of inadequate preparation in his appellate brief "requires rejection of the claim of ineffectiveness." ***See Sandusky***, 203 A.3d at 1044.

In any event, Appellant has not convinced us that the PCRA court erred by holding that the failure to obtain and introduce the letter established prejudice. ***See Smith***, 181 A.3d at 1181-82; ***Roney***, 79 A.3d at 604-05. As noted by the PCRA court, the letter was cumulative of Appellant's testimony that he did not attend school with Filson. We reiterate that Filson identified Appellant at trial as the assailant, N.T. Trial, 5/17/17, at 8, and it was for the trial judge, acting as fact-finder at the bench trial to determine the facts, evaluate witness testimony, and assess credibility. We conclude that the trial court's determinations are supported by the record. Therefore, Appellant's second issue merits no relief. ***See Sandusky***, 203 A.3d at 1044.

For his last issue, Appellant argues that the PCRA court did not properly consider the alibi testimony of Mandy Keiser. Before addressing Appellant's arguments, we briefly summarize the further background to this claim. At the PCRA hearing, Appellant testified as follows:

> [Appellant's PCRA counsel]. During that timeframe in question, where were you staying?
>
> [Appellant]. I was bouncing around from place to place. I would often stay at Mandy Keiser's house.

[Appellant's PCRA counsel]. Were you there the day she testified or were you bouncing around place to place?

[Appellant]. I was mostly there on the weekdays, yes.

N.T. PCRA Hr'g at 63. **But see Johnson, K.**, 180 A.3d at 477 (noting that "Appellant stated he did not know where he was that night specifically, but he was not in the area that the robbery occurred"). Appellant testified that he did not mention to Attorney Hamme that Keiser could testify on his behalf at trial. N.T. PCRA Hr'g at 62. Appellant stated that he did not know why he did not inform Attorney Hamme about Keiser. **Id.**

At the PCRA hearing, Keiser testified that Appellant was with her at Keiser's home on the night of the robbery, December 2, 2015. **Id.** at 33-35. Keiser explained that she did not "tell anybody about this" until November 2019, primarily because she could not risk losing her job of two decades. **Id.** at 42.

At the PCRA hearing, Keiser conceded, however, that she had previously testified for another defendant in an unrelated PCRA hearing in 2015 or late 2014. **Id.** Keiser explained that at the unrelated PCRA hearing, she testified that she had new information that a witness had lied but did not tell anyone for seven years. **Id.** at 43-44. Keiser said she was not afraid to testify at that unrelated PCRA hearing. **Id.** at 44.

The PCRA court found, in relevant part, that Keiser's "testimony at the PCRA hearing was not credible; she contradicted her own testimony several times. Second, we find that she is not credible as a witness" because "she

wrote a letter offering an alibi witness several years after the incident occurred."[8]  Order, 3/17/20, at 5.

On appeal, Appellant argues that the PCRA court did not properly consider the alibi testimony of Mandy Keiser.  Appellant's Brief at 20. According to Appellant, Keiser's testimony establishes Appellant's presence throughout the evening and therefore he could not have robbed Filson.  *Id.* at 21.  In Appellant's view, the PCRA court improperly focused only on Keiser's credibility without addressing whether her testimony was consistent with the testimony and evidence presented at trial.  *Id.* at 22.

Our Supreme Court has stated:

To obtain relief based upon newly-discovered evidence under the PCRA, [the defendant] must establish that: (1) the evidence has

---

[8] The PCRA court's order did not identify Keiser's contradictory testimony. Further, it was not explained at Appellant's PCRA hearing how Keiser's testimony at the unrelated PCRA hearing was "alibi" testimony.  In **Commonwealth v. Jackson**, 2016 WL 127449 (Pa. Super. filed Jan. 12, 2016) (unpublished mem.), the **Jackson** Court summarized Keiser's alibi testimony as follows:

> The general gist of the testimony at the hearing was that Shannon Stuart's girlfriend at the time of the murder and [Jackson's] trial, Mandy Keiser, would provide testimony at a new trial showing Shannon Stuart lied on the witness stand at [Jackson's] trial.  At trial, Mr. Stuart testified that he attempted to fire his gun at the scene of the murder, but that it jammed, so he never actually fired a shot.  However, at the PCRA hearing, Ms. Keiser testified that Mr. Stuart told her that his gun did not jam and that he fired the shot that killed the victim.  Ms. Keiser's testimony was not very consistent and was rather confusing at times.

*Id.* at *4 (citations omitted and formatting altered).

been discovered after trial and it could not have been obtained at or prior to trial through reasonable diligence; (2) the evidence is not cumulative; (3) it is not being used solely to impeach credibility; and (4) it would likely compel a different verdict.

***Commonwealth v. Washington***, 927 A.2d 586, 595-96 (Pa. 2007).

We are guided by the following:

A PCRA court passes on witness credibility at PCRA hearings, and its credibility determinations should be provided great deference by reviewing courts. Indeed, one of the primary reasons PCRA hearings are held in the first place is so that credibility determinations can be made; otherwise, issues of material fact could be decided on pleadings and affidavits alone.

***Commonwealth v. Johnson, R.***, 966 A.2d 523, 539 (Pa. 2009) (citations

omitted); ***Sandusky***, 203 A.3d at 1043-44.

In ***Johnson, R.***, our Supreme Court explained that "assessing credibility

for purposes of ***Strickland***[9] prejudice is not necessarily the same thing as

assessing credibility at a trial." ***Johnson, R.***, 966 A.2d at 541.

[T]he question for the PCRA court is not whether the jury in fact would have credited [the] new evidence. . . . Instead, the question is whether the nature and quality of the evidence is such that there is a reasonable probability that the jury would have credited it and rendered a more favorable verdict. That assessment must include a recognition of the impeachability of the witnesses, and not merely a viewing of their testimony in a most favorable light. Some witnesses may display a demeanor, or be subject to such strong impeachment . . . that the court is convinced that no reasonable jury would believe them.

***Id.*** at 542.

_____

[9] ***Strickland v. Washington***, 466 U.S. 668 (1984).

As set forth above, Keiser testified she was afraid to come forward for Appellant's trial because she was afraid of losing her job. N.T. PCRA Hr'g at 42. Keiser contradicted herself, however, by acknowledging that she was not afraid to testify at an unrelated PCRA hearing in **Jackson**, which occurred a few years earlier. **Id.** at 44. Given the PCRA court's first-hand observations of Keiser, including her demeanor, we must defer to its determination that Keiser's testimony was not credible and that there was no "reasonable probability that the jury would have credited it and rendered a more favorable verdict." **See Johnson, R.**, 966 A.2d at 542.

Because the record supports the PCRA court's credibility determination, we hold it properly denied relief, and affirm the PCRA court's order.[10] **See Johnson, R.**, 966 A.2d at 542; **Sandusky**, 203 A.3d at 1043-44.

Order affirmed.

Judge Strassburger did not participate in the consideration or decision of this case.

---

[10] Furthermore, we note that Appellant, who was allegedly staying with Keiser, never advised Attorney Hamme that Keiser could testify on his behalf at trial. **See** N.T. PCRA Hr'g at 62. Attorney Hamme could not be found ineffective because Appellant failed to establish that Attorney Hamme knew of or should have known of Keiser. **See Johnson, R.**, 966 A.2d at 536.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 03/17/2021